# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3524

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Southern |
| v. | * | District of Iowa. |
| | * | |
| William Leslie Searcy, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  March 10, 1999

Filed:  June 25, 1999

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

William Searcy appeals from his conviction, following a jury trial, on charges of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1994) and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1) (1994).

Prior to trial, Searcy sought to suppress evidence seized from his vehicle following a warrantless stop.  Searcy also sought to suppress evidence seized from his

home pursuant to two search warrants which were obtained following the stop of his vehicle. Searcy alleged that his Fourth Amendment rights were violated by the stop and searches. Following an evidentiary hearing, the district court[1] denied Searcy's motion to suppress. Searcy appeals the district court's order. We affirm.

## I.    BACKGROUND

On November 11, 1997, Detectives Pettit and Disney of the Urbandale, Iowa Police Department arrested a person (hereinafter referred to as Confidential Informant) on an outstanding arrest warrant. The detectives found a small quantity of methamphetamine on Confidential Informant (CI). CI identified his supplier as Searcy and agreed to arrange a methamphetamine buy. As the detectives listened, CI telephoned Searcy and requested that he deliver a quarter-ounce of methamphetamine to CI's home. CI informed the detectives that Searcy would be driving a blue Pontiac Sunbird with license plates that did not match the car, that the car did not have a Vehicle Identification Number (VIN), that CI believed the car to be stolen, and that Searcy carried a gun in his car. CI also advised the officers of the likely route Searcy would take to CI's home.

Detectives Pettit and Disney arranged for a patrol vehicle, driven by Officer Vestal, to be stationed along the route described by CI. The detectives informed Officer Vestal that he should pull over Searcy's car. The detectives, who were positioned behind Searcy, advised Officer Vestal that Searcy's left brake light was not functioning properly, the license plates on Searcy's car did not match the vehicle,[2] and

---

[1]The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa.

[2]Whether Officer Vestal was informed that the license plates did not match Searcy's vehicle is disputed by the parties and is unclear in the record. While the district court assumed that Vestal was informed of the mismatched plates, no factual

Searcy's driver's license was likely suspended.  The detectives did not inform Officer Vestal that Searcy was the subject of a drug investigation.

Upon stopping Searcy, Officer Vestal requested Searcy's driver's license and vehicle registration.  Searcy informed the officer that his driver's license had been suspended.  He was unable to produce the vehicle's registration.  Officer Vestal arrested Searcy for operating a vehicle without a valid license.  Detectives Pettit and Disney arrived at the scene at some point prior to Searcy's arrest.

Officer Vestal handcuffed Searcy, and the three police officers proceeded to search the passenger compartment of Searcy's car.  They discovered a loaded .380 caliber pistol between the driver's seat and console compartment.  In Searcy's wallet, the police discovered a small amount of methamphetamine.  The officers also observed that the vehicle appeared to be freshly painted, the VIN number was missing from the dash of the vehicle, and the VIN number on the door of the vehicle was obscured. Searcy was taken into police custody.  Following an inventory search, his vehicle  was impounded.

In the early morning hours of November 18, 1997, Detective Pettit applied for a search warrant to search Searcy's residence.  In his supporting affidavit, Detective Pettit stated the following facts: 1) the nature of the vehicle stop was the mismatched license plates; 2) a loaded pistol and .5 grams of methamphetamine were found in the vehicle; and 3) the vehicle appeared to be recently painted and the VIN number on the dash had been removed.  In his affidavit, Detective Pettit stated that, in his experience in dealing with persons in stolen vehicles, VIN tag numbers will often be found in the suspect's home or garage.  Detective Pettit further stated that, in his experience, persons

determination was made on the issue by the district court.  As we do not find this issue to be of particular importance to the disposition of the case, it merits no further discussion.

dealing in narcotics will often carry firearms and have additional amounts of narcotics at their homes.

A state court judge issued a search warrant which listed as items to be sought: a VIN plate matching a Pontiac Sunbird, registration tags or other indicia of ownership of the Sunbird, any weapons or ammunition, or any controlled substances, including methamphetamine, cocaine or marijuana. The officers executed the warrant in the early hours of November 18, 1997. Inside Searcy's home, the officers observed a small white box containing suspected methamphetamine, an electronic scale, and a large sum of cash. No VIN plates were found.

Although the scope of the first warrant included controlled substances, the officers did not seize the drugs, scale or cash immediately. Rather, they applied for a second warrant seeking only items commonly associated with controlled substances. The same state court judge issued the second warrant within hours of the first warrant. The second warrant was based upon information obtained during the execution of the first warrant. While executing the second warrant, the officers seized the drugs, scale and cash.

Searcy filed a motion to suppress the evidence obtained from the search of his vehicle and his home. The district court denied Searcy's motion and the case proceeded to trial.[3] On July 7, 1998, following a two-day trial, a jury found Searcy guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession with intent to distribute methamphetamine in violation of 18 U.S.C. §841(a)(1).[4]

---

[3]The HONORABLE ROBERT W. PRATT, United States District Judge for the Southern District of Iowa, presided over the trial.

[4]The four-count indictment also charged Searcy with possession of a stolen firearm in violation of 18 U.S.C. § 922(j) (1994) and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (1994). The

Searcy was sentenced to 63 months imprisonment and three years supervised release. Searcy appeals the district court's denial of his motion to suppress.

## II.    DISCUSSION

### A.    Vehicle Stop and Search

Searcy argues on appeal that the stop and subsequent search of his vehicle violated the Fourth Amendment's prohibition on unreasonable searches and seizures. Searcy argues that Officer Vestal lacked probable cause or reasonable suspicion to justify the stop. He contends that the stop of his vehicle, due to an allegedly defective brake light, was pretextual and that the real reason for the stop was Detective Pettit's suspicion that he was carrying illegal drugs. Thus, Searcy argues that any evidence seized from his vehicle must be suppressed and cannot legally form the basis for the search warrants later obtained by the police to search Searcy's home.

We review a district court's legal conclusions of probable cause and reasonable suspicion de novo, while the facts supporting the district court's denial of a motion to suppress are reviewed for clear error. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir.), cert. denied, 118 S. Ct. 1823 (1998). An officer may stop a vehicle when he has probable cause to believe that a traffic violation, however minor, has occurred. See Whren v. United States, 517 U.S. 806, 812-13 (1996); United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996).

After reviewing the record, we conclude that the district court was correct in determining that Officer Vestal's stop of Searcy's vehicle was not pretextual. Vestal

---

stolen firearm charge was dismissed prior to trial. The jury acquitted Searcy of carrying a firearm during and in relation to a drug trafficking offense.

testified that he stopped Searcy's vehicle because he was aware that the brake light was not functioning[5] and that Searcy's license was probably suspended. "Probable cause exists where an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." Thomas, 93 F.3d at 485. Although Detective Pettit did not share all his suspicions regarding Searcy with Officer Vestal, the information that was given to Vestal, without more, provided him with a reasonable basis for stopping Searcy's vehicle. The district court correctly examined the stop and search of Searcy's vehicle under "a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." Scott v. United States, 436 U.S. 128, 138 (1977) (footnote omitted). We agree with the district court's determination that the traffic stop did not violate Searcy's Fourth Amendment rights.

Following the stop of the vehicle, Officer Vestal asked to see Searcy's driver's license and vehicle registration. Searcy could not produce the vehicle registration and admitted to the officer that his license was suspended. At that point, Officer Vestal could, and did, lawfully arrest Searcy and search his person and vehicle incident to the arrest. See United States v. Robinson, 414 U.S. 218, 235 (1973) (search of person incident to arrest is reasonable search under Fourth Amendment); New York v. Belton, 453 U.S. 454, 460 (1981) (search of passenger compartment of vehicle following arrest of occupant is reasonable under Fourth Amendment). We find, therefore, that the district court correctly denied Searcy's motion to suppress the firearm and methamphetamine discovered by the officers in his vehicle and on his person. Further, this evidence could properly be used by Detective Pettit to support his request for a search warrant for Searcy's home.

---

[5]Although a later examination revealed no defect in the vehicle's brake light, Officer Vestal testified that he relied on information conveyed to him by Detective Pettit as Vestal was not in a position to observe the brake light himself. The district court credited Detective Pettit's testimony that the brake light was malfunctioning at the time. We do not find the district court's decision to credit Detective Pettit's testimony on the matter to be clearly erroneous.

## B.	The Search Warrants

Next, Searcy argues that Detective Pettit's supporting affidavit contained deliberate or reckless falsehoods, rendering the warrant void under Franks v. Delaware, 438 U.S. 154 (1978).[6]  Searcy also argues that the evidence seized during the search of his home should have been suppressed because the first search warrant was not supported by probable cause.[7]  He claims that the supporting affidavit failed to present sufficient facts from which a magistrate could reasonably conclude that the items sought in the warrant would be found in his home.  Further, Searcy contends that,

---

[6]In Franks, the Supreme Court held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-56.

[7]Both parties correctly recognize that the validity of the second search warrant depends solely upon the validity of the first.  As we find the first warrant valid, it necessarily follows that the second warrant is valid as well.

as the affidavit contained false statements, the <u>Leon</u>[8] good faith exception cannot salvage the warrant. We disagree.

### 1. <u>Franks</u> Challenge

We first address Searcy's allegations that Detective Pettit falsified his supporting affidavit. To prevail on his <u>Franks</u> challenge, Searcy must establish 1) that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and 2) that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." <u>Franks</u>, 438 U.S. at 155-56. Searcy points to several allegedly false statements or material omissions[9] in the warrant affidavit which he alleges were intentionally or recklessly made by Detective Pettit. First, Searcy claims that Pettit's statement that Searcy's vehicle was stopped due to mismatched license plates is false because Officer Vestal testified that he stopped the vehicle due to a reportedly malfunctioning brake light. Next, Searcy argues that Pettit's failure to tell the magistrate that a VIN number was found on the door of the vehicle constitutes a material omission. He contends that, had the magistrate known that a VIN number was available on the vehicle, the search warrant would not have been issued. Finally, Searcy claims that Pettit's statement regarding his experience with auto theft constitutes a material misrepresentation meant to mislead the issuing magistrate. As Detective Pettit had prior training experience, but no investigative experience, with auto theft, his statement misled the court.

---

[8]In <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984), the Supreme Court held that evidence obtained by officers acting in objectively reasonable reliance on a magistrate's determination of probable cause should not be suppressed even if a later review reveals the probable cause determination to be incorrect.

[9]The <u>Franks</u> rationale also applies to omissions from supporting affidavits. <u>See</u> <u>United States v. Jacobs</u>, 986 F.2d 1231, 1234 (8th Cir. 1993).

During its <u>Franks</u> hearing, the district court considered each of the alleged misrepresentations and omissions raised by Searcy. The district court held that Searcy failed to prove that any of the statements or omissions were knowingly false or recklessly made by Detective Pettit. The district court found that the nature of the stop was based, at least in part, on the malfunctioning brake light. The district court further found that the required VIN number on the dash of the vehicle was missing, and that Pettit's statement regarding his experience with auto theft did not necessarily imply personal investigatory experience. We agree that Searcy has failed to establish, as the first prong of the <u>Franks</u> inquiry, that the warrant contained any false statements intentionally or recklessly made. Minor errors in the warrant which do not reflect deliberate falsehoods are insufficient to mandate suppression under <u>Franks</u>. <u>See</u> <u>id</u>. at 164-65; <u>United States v. Johnson</u>, 64 F.3d 1120, 1127 (8th Cir. 1995) (Discrepancies in affidavit, similar to those at issue here, show negligence, at best). Therefore, we need not discuss the second <u>Franks</u> prong which requires reviewing the warrant with the false statements redacted and the omissions added. In sum, we find no <u>Franks</u> violation in the first search warrant's supporting affidavit.

### 2.    Probable Cause Challenge

We next turn to Searcy's claim that the warrant was not supported by probable cause. Searcy argues that the affidavit fails to establish specific facts from which a magistrate could reasonably conclude that the items sought in the warrant would be found at Searcy's residence. We disagree.

We give substantial deference to a magistrate's determination of probable cause and will not set aside that determination "unless the issuing judge lacked a substantial basis for concluding that probable cause existed." <u>United States v. Edmiston</u>, 46 F.3d 786, 788 (8th Cir. 1995). When reviewing the sufficiency of an affidavit to support probable cause, we consider the "totality of the circumstances." <u>United States v. Wright</u>, 145 F.3d 972, 975 (8th Cir. 1998). Further, we note that probable cause may

be established by the observations of trained law enforcement officers, see Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998) (citing McDonald v. United States, 335 U.S. 451, 454 (1948)), or by circumstantial evidence. See Edmiston, 46 F.3d at 789.

In his affidavit, Detective Pettit recounted the discovery of the gun and methamphetamine as well as the recently painted vehicle and missing VIN number. Pettit further stated that, in his experience, other VIN numbers and additional narcotics would likely be found in Searcy's home. We find these facts to be legally sufficient to establish probable cause for the issuance of the first search warrant. Viewing the affidavit in a common sense manner, we cannot say that the issuing judge did not have a substantial basis to believe that the items sought in the warrant would be found at Searcy's residence.

As we find the first search warrant was supported by probable cause, we need not address the parties' arguments regarding the applicability of Leon's good faith exception. Accordingly, we hold that the district court correctly denied Searcy's motion to suppress.

## III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-