# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1226

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Thomas Caswell,　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　 *

_____

Submitted: November 14, 2005
Filed: February 3, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Thomas Caswell appeals from the district court's[1] denial of his motion to suppress evidence seized in the search of his home. He argues that the search warrant leading to his conviction was not based on probable cause. Additionally, Caswell argues that the "good-faith" exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984), does not apply because the affidavit supporting the search warrant was "bare bones" and so lacking in indicia of probable cause as to

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

render reliance on it objectively unreasonable. We hold that probable cause supported the search warrant and affirm.

# I. *Background*

On November 4, 2002, Chickasaw County Sheriff's Deputy Keith Rieck received information from the Iowa Division of Narcotic Enforcement that Caswell and Linda Evans had just purchased five boxes of Sudafed from Wal-Mart in Cedar Falls, Iowa. Deputy Rieck and Iowa State Patrol Trooper Shawn Wuchter conducted surveillance of Caswell's vehicle. Trooper Wuchter observed that Caswell and Evans were not wearing seatbelts and conducted a traffic stop based on the seatbelt violation. During the stop, Deputy Rieck searched Caswell, with his consent, and found a baggie of methamphetamine and a short plastic tube in Caswell's shirt pocket. Deputy Rieck also discovered a snort tube in Caswell's coat. Deputy Rieck arrested Caswell for possession of methamphetamine. In a search of the vehicle incident to Caswell's arrest, Deputy Rieck found a Pringles potato chip can under the front passenger seat where Evans was sitting. Inside the can was a plastic sack with 321 Sudafed tablets, each containing 120 milligrams of pseudoephedrine. In the same location, Deputy Rieck also found a small plastic tube with a baggie of methamphetamine inside. Evans was then placed under arrest for possession of methamphetamine and possession of precursors. Finally, Deputy Rieck found two one-gallon cans of Coleman fuel in the truck.

Following the traffic stop and arrest, Deputy Rieck applied for a search warrant for Caswell's residence and surrounding property. Deputy Rieck's affidavit stated that an ongoing narcotics investigation connected Caswell with the illegal use and manufacture of narcotics. Specifically, it included information that Caswell was a known associate of narcotics users and manufacturers; information on August 24, 2002, from an informant, a convicted narcotics user and methamphetamine manufacturer, that Caswell had "heavy narcotic activity taking place at his residence" and that "a lot of meth moves there;" information and a subsequent admission by

Caswell that on November 4, 2002, he purchased five boxes of pseudoephedrine tablets; information that when Caswell was stopped for not using his seatbelt he "was shaking and appeared very nervous;" a statement by Caswell that he was "going home" at the time of the traffic stop; methamphetamine found on Caswell's person at the time of his arrest; and methamphetamine, 321 Sudafed tablets, and Coleman fuel found in Caswell's vehicle at the time of his arrest. Deputy Rieck included in the affidavit his knowledge that "Coleman fuel is used in the lithium/anhydrous method of methamphetamine production."

Based on the affidavit, the magistrate judge issued the search warrant, and law enforcement executed the warrant on the same day. During the search of Caswell's home, the officers seized numerous items of drug paraphernalia, precursors, and related items. They also seized a firearm and several bullets and shells for various firearms. A grand jury indicted Caswell on three drug offenses and two firearm offenses. Subsequently, Caswell filed a motion to suppress. The magistrate judge concluded that while it was "doubtful that the warrant application, standing alone, provide[d] an adequate basis to conclude" that probable cause existed to search Caswell's home, he did not have to decide the probable cause issue because it was evident that the good-faith exception to the exclusionary rule applied.

Caswell filed his objections to the magistrate judge's report and recommendation, but the district court adopted the report. Caswell then entered a conditional plea of guilty to three counts of the indictment—possession of pseudoephedrine with intent to manufacture methamphetamine; conspiracy to manufacture five grams or more of pure methamphetamine, and possession of a firearm with an obliterated serial number. The district court sentenced Caswell to concurrent 87-month terms of imprisonment on two of the counts and 60 months on the remaining count to be served concurrent with the other convictions. Caswell filed a timely notice of appeal.

II. *Discussion*

Caswell claims that his Fourth Amendment rights were violated because the affidavit for the warrant to search his home contained insufficient information to establish probable cause.[2] Specifically, he contends that the informant's tip was unreliable and that the discovery of contraband in his car was insufficient to create a fair probability that evidence of a crime would be found at his residence. We review a district court's denial of a motion to suppress de novo, while we review the underlying factual determinations for clear error. *United States v. Carpenter*, 422 F.3d 738, 744 (8th Cir. 2005).

Under the Fourth Amendment, a search warrant is valid if it is based on probable cause. *Id*. The determination of whether probable cause exists to issue a search warrant is made using a "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Applying this test, the magistrate should "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. Probable cause is a "fluid concept;" therefore, magistrates should read affidavits with common sense and "not in a grudging, hyper technical fashion." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998).

When reviewing a magistrate's probable cause determination, we must "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In addition, this court gives great deference to the magistrate's probable cause determination. *United States v. Arenal*, 768 F.2d 263, 266 (8th Cir. 1985). While a magistrate would not have a substantial basis for concluding probable cause

---

[2]Caswell does not challenge the validity of the search of his vehicle incident to his arrest.

existed where the affidavit was a "bare bones" recitation of conclusory statements by the affiant, once "we move beyond . . . 'bare bones' affidavits . . . this area simply does not lend itself to a prescribed set of rules." *Gates*, 462 U.S. at 239. We must affirm a district court's denial of a motion to suppress "unless it is 'unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made.'" *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Bieri*, 21 F.3d 811, 814 (8th Cir. 1994)).

To establish probable cause, an officer may rely on an informant's tip. When an informant has provided reliable information in the past or where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination. *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005). "When an informant's information is at least partly corroborated . . . 'attacks upon credibility and reliability are not crucial to the finding of probable cause.'" *Gladney*, 48 F.3d at 313 (quoting *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992)). This court reads the affidavit in its entirety to see if it contains "both statements from the informant and other information . . . providing a substantial basis for finding a 'fair probability' that contraband or evidence of illegal activity could be found at the residence stated in the search warrant." *Id.*

A time lapse between the informant's disclosure and the search warrant's execution does not necessarily make probable cause "fatally stale." *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir. 1995). Courts must consider other factors, such as the type of property subject to the search and the nature of the criminal activity involved, in determining whether information is stale. *Id.* "Probable cause 'cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. Time factors must be examined in the context of a specific case and the nature of the crime under investigation.'" *Id.* (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)).

We have upheld a search of a residence where the search warrant was based on an automobile search incident to arrest. *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999). In *Searcy*, two detectives, after receiving information from a confidential informant, suspected that the defendant had drugs and a gun in his car and that his car was stolen. The detectives arranged for a patrol car to be stationed along the route that the defendant would take to a planned drug sale with the confidential informant. *Id*. at 977. They informed the patrol officer that he should pull over the vehicle because the left brake light was not functioning properly, the license plates on the car did not match the vehicle, and the defendant's license was likely suspended. *Id*. The officer did not know that the defendant was the subject of a drug investigation. *Id*. After stopping the defendant, he subsequently arrested him for operating a vehicle without a valid license, handcuffed the defendant, and searched the passenger compartment of the vehicle. *Id*. The search yielded a loaded .380 caliber pistol next to the driver's seat and a small quantity of methamphetamine in the defendant's wallet. *Id*. The officer noticed during the search that the VIN number was missing from the dashboard and the vehicle appeared freshly painted. *Id*. One week later, a detective applied for a search warrant to search the defendant's residence based on the evidence discovered in the vehicle search. *Id*. In addition, the detective's affidavit stated that, based on his experience, "persons dealing in narcotics will often . . . have additional amounts of narcotics at their homes." *Id*. at 978. In rejecting the defendant's argument that the search warrant was not supported by probable cause, we held that the discovery of the gun and the methamphetamine in the vehicle, along with the detective's statement that, in his experience, other narcotics would likely be found at the residence, provided a substantial basis for the issuing judge to believe that the items sought in the search warrant would be found at the defendant's residence. *Id*. at 981.

Other circuits have recognized that because magistrates are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," magistrates can infer, in the case of drug

dealers, that "evidence is likely to be found where the dealers live." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986); *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting *Angulo-Lopez*, 791 F.2d at 1399).

We hold that sufficient information existed within Deputy Reick's affidavit to establish probable cause and support the issuance of a search warrant of Caswell's home. First, while the affidavit did not indicate that the informant, a convicted narcotics user, had provided reliable information in the past, the affidavit did list evidence to corroborate the informant's statements that Caswell was involved in narcotic activity: first, the affidavit stated that an ongoing police investigation revealed Caswell to be involved with the use and manufacture of narcotics, and second, the affidavit stated that Caswell purchased five boxes of Sudafed and had methamphetamine on his person and in his car at the time of his arrest. In accordance with *Gladney*, because the police corroborated part of what the informant said, an attack upon the informant's reliability is not crucial to finding probable cause.

Second, while the informant provided the information on August 24, 2002, over two months before Caswell's arrest, other facts indicate that the information was not stale. On November 4, 2002, as provided in the affidavit, Caswell admitted to purchasing five boxes of Sudafed and had methamphetamine on his person and methamphetamine and Coleman fuel in his car at the time of the arrest. In addition, the officer, based on his experience, noted that Coleman fuel is used in the production of methamphetamine. This evidence supports the informant's previous statement that Caswell was involved in narcotics activity.

Third, the affidavit contained other evidence that, when combined with the police's ongoing investigation of Caswell and the informant's tip, could support an inference that drugs may be found at Caswell's residence. The search of Caswell's car produced methamphetamine, which the police used to support the warrant to search Caswell's residence. In addition, the police found methamphetamine on Caswell's

person during a consent search before they arrested him and searched his car. Because probable cause existed to search Caswell's vehicle, and because the police used legally-retrieved evidence from the vehicle to support the warrant to search Caswell's residence, probable cause for the search existed. Also, Deputy Rieck's affidavit, like the affidavit in *Searcy*, listed the evidence retrieved from the vehicle as support for the search warrant. While Deputy Rieck did not state, like the detective in *Searcy*, that persons dealing in narcotics often have drugs at their homes, Deputy Rieck did include Caswell's statement that he was "going home" at the time of the stop and the informant's statement that heavy narcotic activity occurs at Caswell's residence.

Accordingly, we hold that probable cause existed to support the search warrant for Caswell's residence and affirm the district court's denial of Caswell's motion to suppress.[3]

_____

[3]Because we find that probable cause existed to support the search warrant, we need not address Caswell's additional argument that the "good faith" exception to the exclusionary rule does not apply.