# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3750

_____

United States of America,        *
          *
      Plaintiff - Appellee,    *
          *  Appeal from the United States
     v.               *  District Court for the District of
          *  Minnesota.
Jeffrey Mathew Jeanetta,    *
          *
      Defendant - Appellant.  *

_____

Submitted: June 9, 2008
Filed: July 7, 2008

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

Jeffrey Mathew Jeanetta appeals his convictions for conspiracy to distribute and possess with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, distribution of methamphetamine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). We affirm.

# I

In August 2005, state investigators received information from a confidential informant connecting Jeanetta with drug trafficking. The informant stated Jeanetta was selling between two and four pounds of methamphetamine each week out of his residence. The investigator who interviewed the informant knew Jeanetta had two prior drug-related felonies, and had received similar reports regarding Jeanetta over the course of the previous year.

On August 30, 2005, at the behest of investigators, the informant went to Jeanetta's residence and purchased one-quarter ounce of methamphetamine. Two weeks later, the investigators applied for a search warrant. As probable cause for the warrant, investigators cited the information from the informant, the controlled drug buy, information from other sources indicating Jeanetta was dealing large quantities of methamphetamine from the residence, and Jeanetta's prior drug-related felony convictions. A warrant issued and the search uncovered: a modest amount of methamphetamine, cocaine and marijuana; $5364 cash; scales; Ziploc bags; a two-way police radio and scanner; a list of police frequencies; night vision binoculars, surveillance cameras on a detached garage with a video monitor hooked up to the cameras; glass pipes for smoking drugs; and miscellaneous drug paraphernalia. While executing the warrant, an individual drove up to the residence and was arrested when a search of his vehicle uncovered methamphetamine, drug paraphernalia, drug notes, and $2000 cash.

Jeanetta was arrested and taken into state custody. The next day, he was interviewed by two investigators. After some initial reluctance, Jeanetta agreed to cooperate and the investigators summoned an agent from the Drug Enforcement Agency. Jeanetta told the DEA agent about several of his drug sources, including names of individuals, physical descriptions, drug quantities purchased, cost of the drugs, etc. After being debriefed, Jeanetta agreed to cooperate and arrangements were

made for him to begin making controlled buys from the named sources. In early October 2005, before those plans came to fruition, Jeanetta absconded.

On October 12, 2005, a federal indictment was returned charging Jeanetta with conspiracy to possess and possession with intent to distribute methamphetamine. Eight months later, on June 1, 2006, Jeanetta was taken into custody by members of a multi-jurisdictional task force. A search of the RV he was living in uncovered two handguns. Jeanetta was returned to state custody and negotiated a plea agreement with the state prosecutor to drug charges stemming from his arrest in 2005. After pleading guilty to the state charges, Jeanetta was released to federal authorities on July 18, 2006, and arraigned on the federal indictment before a magistrate judge the next day.

On August 24, 2006, Jeanetta filed motions for discovery and suppression of evidence seized in the search of his residence. On September 29, 2006, Jeanetta moved to dismiss the indictment for violations of 1) the Speedy Trial Act, 2) his Sixth Amendment right to a speedy trial, and 3) Rule 5(a) of the Federal Rules of Criminal Procedure. On October 30, 2006, the magistrate judge[1] issued a report and recommendation recommending the motions to suppress and dismiss be denied. On November 28, 2006, the district court[2] adopted the report and recommendation.

On November 24, 2006, the government moved to continue the December 4, 2006, trial date. Jeanetta objected but the district court continued the trial until January 9, 2007. On December 20, 2006, the government filed a superceding indictment adding the weapons charges. Jeanetta moved a second time for dismissal

---

[1]The Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

based on violations of 1) the Speedy Trial Act, 2) his Sixth Amendment right to a speedy trial, and 3) Rule 5(a) of the Federal Rules of Criminal Procedure. The motions were again denied and trial commenced on January 9, 2007. Jeanetta was convicted on all counts and sentenced to two life terms and one 360 month term. On appeal, he argues:

1. The search warrant for his residence was unsupported by probable cause and the district court erred in refusing to suppress the evidence seized during the search;

2. The forty-nine-day delay between the time of his arrest and the arraignment before a federal magistrate judge violated Rule 5(a) of the Federal Rules of Criminal Procedure and the district court erred in refusing to dismiss the indictment as a sanction;

3. The delay in bringing him to trial violated his Sixth Amendment right to a speedy trial; and

4. The district court erred in allowing a police officer to testify as an expert about the drug-related significance of items seized during the search of Jeanetta's residence.

II

A.    <u>Search Warrant – Probable Cause</u>

Jeanetta argues there was insufficient probable cause upon which to base a warrant to search his residence and the evidence seized should have been suppressed. He contends the warrant relied, in part, on the informant's controlled drug buy which took place two weeks before the issuance of the warrant. According to Jeanetta, any information gleaned by the informant during the drug buy was stale by the time it was presented to the state court in support of the warrant.

On appeal from the denial of a motion to suppress, we review the district court's historical factual findings for clear error and its conclusions of law on the probable cause issue de novo.  See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Grimaldo, 214 F.3d 967, 976 (8th Cir. 2000).  The evidence as a whole must provide a substantial basis for a finding of probable cause to support the issuance of a search warrant.  Grimaldo, 214 F.3d at 976.  "Probable cause exists when the affidavit sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched."  Id. (internal quotations omitted).  When reviewing the sufficiency of an affidavit to support a finding of probable cause, we consider the totality of the circumstances.  United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999).  "[W]e note that probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence," id., and "[i]t is axiomatic by now that under the fourth amendment the probable cause upon which a valid search warrant must be based must exist at the time at which the warrant was issued, not at some earlier time."  United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981) (quoting United States v. Steeves, 525 F.2d 33, 37 (8th Cir. 1975)).

Courts consider the nature of the property sought in determining whether probable cause was shown to exist on the date of the warrant.  For example:

> Although there can be no precise rule as to how much time may intervene between the obtaining of the facts and the issuance of the search warrant, in dealing with a substance like marihuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later.

Id. (quoting Ashley v. State, 241 N.E.2d 264, 269 (Ind. 1968)) (other citations omitted).

Standing alone, the fact the controlled buy was made two weeks before the warrant issued does not render the information in the application stale. Probable cause must exist when a warrant is issued, not merely at some earlier time, but "[t]here is no bright-line test for determining when information is stale . . . , and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." Id. Additionally, "[w]here continuing criminal activity is suspected, the passage of time is less significant." United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998) ("[T]he two and one-half weeks lapse did not negate the existence of probable cause . . . .") (quoting United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996)). "In investigations of ongoing narcotics operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" United States v. Ortiz, 143 F.3d 728, 732-33 (2d Cir. 1998) (quoting Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991)); see also United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) ("With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.") (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)).

We conclude the two week period between the controlled buy and issuance of the warrant did not render the informant's information presumptively stale. Instead, considering the totality of the circumstances, the information supported a belief Jeanetta was engaged in an ongoing criminal enterprise and evidence of his illegal activities would be found at his residence. Therefore, we affirm the district court's denial of the motion to suppress.

B.     Rule 5(a) – Arraignment before the Magistrate Judge

Jeanetta next argues the government violated Rule 5(a) of the Federal Rules of Criminal Procedure by delaying his appearance before a magistrate judge for forty-nine days following his arrest. According to Jeanetta, the district court should have dismissed the indictment as a sanction for violating Rule 5(a).

Rule 5(a) of the Federal Rules of Criminal Procedure provides the arrested person shall be taken without unnecessary delay before a magistrate judge.

> The requirements of [Rule 5(a)] and the teachings of the Supreme Court in McNabb v. United States, 318 U.S. 332 (1943) and Mallory v. United States, 354 U.S. 449 (1957) are designed to frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual. But this salutary principle is not applicable where the person under arrest is in the custody and under the control of local and not federal officers, unless, of course, the state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities. See Grooms v. United States, 429 F.2d 839, 842-843 (8th Cir. 1970), and the numerous cases there cited.

United States v. Morris, 445 F.2d 1233, 1236 (8th Cir. 1971).

When Jeanetta was arrested on June 1, 2006, he was taken into and held in state custody until he entered a plea of guilty to the outstanding state charges. Upon pleading guilty, Jeanetta was released into federal custody on July 18, 2006, and arraigned the following day. Because Jeanetta was in state custody the entire time, the protections of Rule 5(a) are not implicated. Further, Jeanetta offers no evidence to suggest he was held in state custody at the direction of or in concert with federal officers. Thus, there was no violation of Rule 5(a).

C.      Sixth Amendment Violation

Jeanetta contends his Sixth Amendment right to a speedy trial was violated by the fifteen-month delay between his indictment in October 2005 and the trial in January 2007.  Notably, he does not allege a violation of the Speedy Trial Act, 18 U.S.C.A. § 3161(c)(1).

We consider four factors when applying a Sixth Amendment balancing test to pretrial delay:  1) the length of delay; 2) the reason for delay; 3) whether the defendant asserted the right to a speedy trial; and 4) whether the defendant suffered any prejudice.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not.  United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002).

A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring application of the Barker factors.  Doggett v. United States, 505 U.S. 647, 652 n.1 (1992); United States v. Walker, 92 F.3d 714, 717 (8th Cir. 1996) (finding thirty-seven month delay presumptively prejudicial); cf. United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998) (finding five-month period between detention and trial on drug charges, interrupted by pretrial motions, "was not sufficiently long to be presumptively prejudicial"); United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) (holding delay just over seven months did not trigger Sixth Amendment analysis).  Where no presumptively prejudicial delay exists we need not examine the remaining three factors under Barker.  Doggett, 505 U.S. at 651-52; Sprouts, 282 F.3d at 1043.

We assume Jeanetta has shown presumptive prejudice resulting from the fifteen-month delay and consider the additional Barker factors.  Under the second factor, we note the reason for nearly eight months of the delay was Jeanetta's flight from prosecution.  If Jeanetta had remained available the delay in prosecuting him

would have been less than eight months – well within the limits suggested by the Supreme Court. Thus, this factor weighs heavily in favor of finding no Sixth Amendment violation. As to the third factor, there is no dispute Jeanetta timely asserted his speedy trial rights. Finally, as to the fourth factor, Jeanetta argues the delay prejudiced his defense because it allowed the government to file a superceding indictment adding the weapons charges and locate additional witnesses. The weapons charge, however, resulted directly from Jeanetta's flight to avoid prosecution. Further, even assuming such matters qualify as "prejudice" in this context, Jeanetta offers no specifics to support his claim the government's witnesses would not have been similarly available had the trial occurred earlier. Finally, Jeanetta points to no change of circumstance making it more difficult for him to marshal a defense to the charges, i.e., disappearance of witnesses or evidence. Thus, there was no unreasonable delay, no prejudice, and no Sixth Amendment violation.

D.     Expert Testimony

Jeanetta's final argument is the district court abused its discretion when it allowed expert testimony from a police officer explaining the significance of various items seized during the search of his home. For example, the officer testified the Ziploc bags found were commonly used by drug dealers to repackage drugs, and were popular because they were easy to use, resealable, and allowed the drugs to be viewed. He also testified it was common for drug dealers to use radios, scanners, cameras, monitors, and night vision goggles to monitor the activities of law enforcement. The officer further testified it was common for drug dealers to maintain large quantities of cash on hand for drug-related transactions. According to Jeanetta, this testimony fell outside the bounds allowable under Fed. R. Evid. 702. Additionally, Jeanetta argued he was a drug user, not a drug dealer, and the officer's testimony was unfairly prejudicial under Fed. R. Evid. 403.

We review the district court's decision to allow expert testimony under an abuse of discretion standard. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997); United States v. Brown, 110 F.3d 605, 610 (8th Cir. 1997).

Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter. See Fed. R. Evid. 702. Such a witness is regarded as an expert under the rule. Id. "A district court has discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." Brown, 110 F.3d at 610 (citations omitted). In deciding whether to permit expert testimony, a district court still must balance the probative value of the testimony versus its possible prejudicial effects. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) (holding Daubert applies not only to scientific testimony but to all expert testimony).

The significance of seemingly innocuous household items, e.g., Ziploc bags and scales, along with the presence of sophisticated surveillance equipment, including scanners, cameras, monitors, and night vision goggles, combined with the presence of large amounts of cash, was highly relevant to Jeanetta's claim he was merely a drug user and not a trafficker. Because the importance of the items would not necessarily be apparent to a lay observer, the expert testimony was necessary to explain the significance of the items as they related to the world of drug dealing.

Further, the fact the evidence was prejudicial to Jeanetta's defense does not mean it constituted *unfair* prejudice. It is the job of government prosecutors to present evidence prejudicial to the defendant; they are simply not allowed to present evidence which unfairly prejudices the defendant. Here the evidence directly refuted Jeanetta's defense. We conclude the district court properly balanced the probative value of the

evidence against its prejudicial effect and correctly concluded it fell within the parameters of Rule 702.

III

The judgment of the district court is affirmed.

_____