# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3883

_____

United States of America,

        Appellee,

v.

Gina Morrison,

        Appellant.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Missouri.
\*
\*
\*

_____

Submitted: September 25, 2009
Filed: January 29, 2010

_____

Before BYE, ARNOLD, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Gina Morrison was charged with possessing pseudoephedrine knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). Morrison filed a motion to suppress evidence, alleging that a search warrant executed at 27091 Roelker Road in Wright City, Missouri, on October 14, 2007, was not supported by probable cause. After an evidentiary hearing, the magistrate judge issued a report and recommendation finding that the search warrant was supported by

probable cause and recommending that the district court[1] deny Morrison's motion to suppress. The district court adopted the magistrate judge's report and recommendation.

The matter proceeded to trial. At the conclusion of voir dire, the government exercised peremptory challenges to strike Jurors 5 and 14, both African Americans. Morrison's codefendant objected to the government's use of these two peremptory challenges based upon *Batson v. Kentucky*, 476 U.S. 79 (1986). Morrison joined in this objection.[2] The district court overruled the objection, concluding that the government had articulated race-neutral reasons for exercising its peremptory challenges as to both jurors. Morrison appeals the suppression motion denial and the *Batson* challenge ruling. We affirm.

## I. *Background*
### A. *Seizure of Evidence*

Warren County Sheriff's Office Detective Chad Fitzgerald received information about drug activities at 27091 Roelker Road. Detective Fitzgerald prepared a written affidavit for a search warrant. The affidavit defined the location as the residence of Richard Rodriguez and Gina Morrison. The affidavit further stated that on October 10, 2007, Detective Deric Dull informed Detective Fitzgerald that Detective Dull had received information from an arrestee claiming to have made purchases for Morrison in exchange for methamphetamine. Detective Dull also attested that he overheard a telephone conversation between his informant and Morrison in which Morrison told the woman to bring the materials to "Ricky's[3] house," the home of Morrison's

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[2]Although Morrison's codefendant initiated the *Batson* challenge, the record reflects that Morrison's counsel argued in support of the objection and the government admits that the objection is imputed to Morrison for purposes of this appeal.

[3]"Ricky" refers to Richard Rodriguez.

boyfriend, and that Morrison would have something for her. Detective Dull drove the informant to a location that she identified as Ricky's residence and the informant said that she had previously delivered methamphetamine precursors in exchange for methamphetamine to the location.

In the affidavit, Detective Fitzgerald also recited that he investigated and confirmed the location of Rodriguez's residence at 27091 Roelker Road. The affidavit also stated that officers had driven by this location twice, and on each occasion the officers smelled a chemical odor that, from their experience, indicated likely methamphetamine manufacturing. Finally, the affidavit alleged that on two occasions on October 11, 2007, officers saw a green pickup truck previously associated with Morrison on the premises of 27091 Roelker Road.

Upon this sworn affidavit, the judge issued a search warrant. The warrant authorized the search of the subject residence, outbuildings, vehicles, and the persons of Rodriguez and Morrison. The search warrant authorized the "seizure of illegal narcotics, currency obtained as a result of illegal activity, firearms, and any other evidence of criminal activity that would be furthered by illegal narcotics activity."

The officers executed the search warrant for 27091 Roelker Road at approximately 2:15 a.m. on October 14, 2007. When the officers entered the residence, they detained Morrison, Rodriguez, and three other individuals. After orally reading the occupants their *Miranda* rights, Detective Fitzgerald asked the occupants for their identification. Morrison said that her identification was in her purse in her bedroom. Detective Fitzgerald retrieved the purse and seized drug paraphernalia from it. The officers found and seized two digital scales, a glass pipe, and a bag of blue pills and white powder from other parts of the residence. From the outbuilding shed, the officers seized methamphetamine chemical precursors and marijuana. Morrison said that the green pickup truck belonged to her mother, but she drove it. The officers

seized cans of Coleman fuel from the truck because the fuel was known to be a methamphetamine precursor chemical.

Morrison filed a motion to suppress, alleging that the search warrant executed at 27091 Roelker Road was not supported by probable cause. The magistrate judge found that the search warrant was supported by probable cause and recommended to the district court that Morrison's motion to suppress be denied. The district court adopted the magistrate judge's report and recommendation.

### B. Batson *Challenge*

The matter proceeded to trial. During voir dire, the jury was asked whether any member of the panel had been charged with any state or federal offense punishable by a year or more in prison, or had a close friend or family member so charged. In response, Juror 5, an African American, initially responded that she had a grandchild who had been charged with an unknown offense. Upon further questioning, she informed the parties that she did not believe her grandchild's arrest would affect her ability to be impartial. Several minutes later, after responses by two other jurors, Juror 5 informed the parties that she had recalled another grandchild who also had been arrested. She believed that this grandchild had been convicted and incarcerated for a drug offense. She also explained that her husband had a drinking problem.

In response to the same question, Juror 14, an African American, reported that her husband had been convicted of theft in 1969. She indicated that she did not believe her husband's prior conviction would affect her ability to be impartial. In addition, according to the survey completed by the prospective jurors, Juror 14 had been employed by the Department of Mental Health for 19 years.

The government proceeded to strike Jurors 5 and 14, and Morrison's codefendant objected claiming that the government did not strike similarly-situated white jurors. Morrison joined in the objections. The district court made no specific

finding on the record as to whether the appellant and her codefendant had established a prima facie case showing that the government had exercised these two peremptory challenges on the basis of race. The district court nonetheless required the government to state reasons for the strikes. The court then denied the *Batson* challenge, finding that the government had articulated race-neutral reasons for the strikes.

## II. *Discussion*
### A. *Suppression of Evidence*

On appeal, Morrison contends that her statements and the search evidence from 27091 Roelker Road should be suppressed because the search warrant was not supported by probable cause. Morrison mounts three attacks against the warrant's validity. First, she argues that the information contained in the search warrant was stale by the time the police executed the warrant. Second, she argues that the untested and uncorroborated informant could have had motive to lie about possible methamphetamine manufacturing occurring at 27091 Roelker Road. Third, she contends that the police made no effort to pinpoint the chemical odors emanating from the residential area. Finally, Morrison argues that the government wrongly relied on her alleged admissions made during the execution of the warrant. The government, according to Morrison, had assured her that it would not use her admissions at trial.

"We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006) (citation omitted). "We will reverse a district court's denial of a motion to suppress only if the district court's decision 'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" *Id.* (quoting *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006)).

We hold that the affidavit established probable cause. First, standing alone, the fact that the drive by the 27091 Roelker Road residence occurred three to four days

prior to the execution of the warrant does not render the information in the warrant stale. *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008). "Probable cause must exist when a warrant is issued, not merely at some earlier time, but there is no bright-line test for determining when information is stale . . . ." *Id.* (internal quotation, alteration, and citation omitted); *see also United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006) (holding that "[a] time lapse between the informant's disclosure and the search warrant's execution does not necessarily make probable cause fatally stale") (internal quotations and citation omitted). Furthermore, "[t]ime factors must be examined in the context of a specific case and the nature of the crime under investigation." *Caswell*, 436 F.3d at 898 (internal quotations and citation omitted). "'[W]here continuing criminal activity is suspected, the passage of time is less significant.'" *Jeanetta*, 533 F.3d at 655 (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)). "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale." *Id.* (internal quotations, alterations, and citations omitted); *see also United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (finding that "'[w]ith respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.'") (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).

We conclude that the three to four day period between the police drive-by and the execution of the warrant did not render the information obtained via the drive-by presumptively stale. Instead, considering the totality of the circumstances, the information supported a belief that Morrison was engaged in an ongoing criminal enterprise and that evidence of her illegal activities would be found at the residence.

Second, Morrison's argument that the search warrant was not supported by probable cause because the informant could have had a motive to lie is similarly unpersuasive. The government concedes that the search warrant affidavit does not explicitly establish the informant's reliability. However, "[w]hen an informant's

information is at least partly corroborated attacks upon credibility and reliability are not crucial to the finding of probable cause." *Caswell*, 436 F.3d at 898 (internal quotations, alteration, and citations omitted). Furthermore, "[w]hen an informant has provided reliable information in the past or where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination." *Id.* (citing *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005)).

In the instant case, the informant's information was corroborated in a number of ways. First, Detective Dull corroborated the informant's claims via the telephone conversation between the informant and Morrison. Second, Detective Fitzgerald was able to confirm that the residence identified by the informant as "Ricky's house" at 27091 Roelker Road belonged to Richard Rodriguez. Third, Detective Fitzgerald learned that Morrison had a previous arrest for possession of pseudoephedrine with the intent to manufacture methamphetamine—a charge implicating the same conduct that the informant alleged. Based on the record before us, we conclude that the information the informant provided was sufficiently corroborated.

Third, Morrison argues that the police made no effort to pinpoint the source of the chemical odors. While the government did not cite specific efforts that it made to locate the source of the odors, the record reflects that such efforts were unnecessary. Based on the information obtained from the police drive-by, the government informant, and other investigative efforts, the police had sufficient cause to believe that the odors emanated from the 27091 Roelker Road residence.

Finally, Morrison's argument that the government introduced statements and evidence that it assured her would not be used at trial lacks merit for two reasons. First, while Morrison offers the conclusory assertion that the police made this assurance, she offers no evidence to support this claim. Second, and more importantly,

Morrison has failed to demonstrate how she was harmed by the introduction of the statements and evidence.

Based on the record before us, we conclude that the totality of the circumstances support a finding of probable cause. *See Jeanetta*, 533 F.3d at 654 (holding that when reviewing the sufficiency of an affidavit to support a finding of probable cause, we consider the totality of the circumstances). The unobjectionable evidence, obtained via the search of 27091 Roelker Road and presented at trial, was sufficient to support the conviction.

## B. Batson *Challenge*

Morrison next argues that the district court clearly erred when it denied her *Batson* challenge because the government did not remove similarly-situated white jurors. We affirm the district court's ruling on the issue of discriminatory intent unless it is clearly erroneous. *United States v. Samuels*, 543 F.3d 1013, 1017 (8th Cir. 2008).

*Batson* outlines a three-step process for a trial court's analysis addressing whether a peremptory challenge was race based.

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328–29 (2003) (internal citations omitted).

In the instant case, Morrison, via her codefendant, objected to the government's use of peremptory strikes to exclude Jurors 5 and 14, both African Americans.[4] The district court required the government to state reasons for the strikes. The court then denied the *Batson* challenge finding that the government stated race-neutral reasons for the strikes.

### 1. *Juror 5*

Here, the government's asserted race-neutral basis for striking Juror 5 was its reservations about her ability to be forthcoming about her family situation. The government also noted that Juror 5's husband had a drinking problem.

Morrison asserts that these reasons are pretextual because similarly-situated white jurors were not removed. First, she claims that like Juror 5, Juror 1 had a relative who had been convicted for drug activity and that Juror 1 similarly believed that her relative was treated fairly. Second, Morrison argues that Juror 13 was similarly situated to Juror 5 because he had two relatives who had been convicted of drug offenses. She further states that Juror 13 also added information to an answer that he previously gave, so the government's concern about Juror 5 not being forthcoming on this basis is disingenuous. Finally, Morrison contends that Juror 9 is also similarly situated to Juror 5 because he had a son who was convicted of a DWI offense four times. According to Morrison, if the government was actually concerned about jurors with convicted family members or family members with drinking problems, Juror 9 certainly should have been removed. Morrison makes substantially the same arguments regarding Juror 27.

Morrison is correct in her assertion that "'similarly situated' for purposes of justifying the use of peremptory strikes does not require similarity in all respects."

---

[4]For the sake of this appeal, we assume that Morrison made a prima facie showing that the government exercised the peremptory challenges on the basis of race because the district court did not make a finding regarding this issue.

*Smulls v. Roper*, 535 F.3d 853, 865 (8th Cir. 2008). Nevertheless, we have upheld the use of very fine distinctions between jurors. *United States v. Davis*, 154 F.3d 772, 781 (8th Cir. 1998) (finding that there is a sufficient difference between working as a drug counselor and working as a drug prevention volunteer to fend off a *Batson* challenge). In this case, the distinctions may be fine, but we cannot conclude that they are meaningless. Nor can we say that they are irrelevant or unconnected to a legitimate trial strategy. Morrison has not identified one juror who shared each of the qualities that the government cited as a reason for dismissing Juror 5. We see no clear error in the district court's ruling.

### 2. *Juror 14*

The government represented that it dismissed Juror 14 because, due to her past work history, she "quite likely" had contact with individuals who had drug addictions. The government also noted that she may have had personal knowledge about drugs or addicts. Finally, the government stated that "there wasn't a whole lot to know about her other than the criminal history of her family."

Morrison argues that these reasons are pretextual because the government did not explore whether Juror 14 actually had personal knowledge of drugs or addicts. Additionally, Morrison notes that Juror 14 spoke more during the voir dire process than most other jurors, so the government's claim that it did not know much about her is disingenuous.

We are not persuaded by Morrison's arguments. Morrison has failed to identify similarly-situated white jurors to Juror 14 who were not removed or to identify any other indicia of pretext. Although our recent cases have moved away from the "silly or superstitious" reasons are sufficient language that defined earlier *Batson* challenges, *see Elem v. Purkett*, 64 F.3d 1195, 1198 (8th Cir. 1995), the standard that the government must meet remains "extremely low." *Moran v. Clarke*, 443 F.3d 646, 652 (8th Cir. 2006) (citation omitted). Moreover, we have stated that the "findings

-10-

underlying a district court's *Batson* analysis depend largely on credibility evaluations," and we give those findings great deference. *United States v. Maxwell*, 473 F.3d 868, 871 (8th Cir. 2007).

## III. *Conclusion*

For the reasons stated, we affirm both judgments of the district court.

_____