# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2137

_____

Antonio Darrail Burton,             *
                                      *

       Petitioner - Appellant,    *
                                      *   Appeal from the United States

   v.                           *   District Court for the
                                      *   District of Minnesota.

Joan Fabian, Commissioner of    *
Corrections,                     *
                                        *

       Respondent - Appellee.    *

_____

Submitted:  March 12, 2010
Filed:   July 16, 2010

_____

Before RILEY, Chief Judge,[1] BRIGHT, and WOLLMAN, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Antonio Darrail Burton appeals from a district court determination denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Burton argues his sentence was imposed in violation of *Cunningham v. California*, 549 U.S. 270 (2007). The district court[2] issued a certificate of appealability on the issue of whether

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

*Cunningham* may be applied retroactively to Burton's case. Because we conclude that Burton may not collaterally attack his sentence based on *Cunningham*, we affirm.

I

In 1998, a jury convicted Burton of criminal sexual conduct, aggravated robbery, burglary, and related crimes. At sentencing, the Minnesota district court determined that Burton's crimes included the presence of several aggravating factors and departed upward from the Minnesota Sentencing Guidelines. The court sentenced him to 464 months' (38 years, 8 months) imprisonment.

Burton appealed his conviction and sentence. On August 3, 1999, the Minnesota Court of Appeals affirmed in part and reversed in part, remanding one of Burton's burglary convictions for resentencing. The Minnesota Supreme Court denied Burton's petition for further review on September 14, 1999. On remand, the district court vacated one of the burglary counts and reduced Burton's sentence to 416 months' imprisonment in an order dated May 9, 2000.

Burton petitioned for state post-conviction relief, claiming his conviction should be set aside because of newly discovered evidence and ineffective assistance of counsel. The district court denied his petition, and the Minnesota Court of Appeals affirmed on October 15, 2002.

Burton filed a second state post-conviction petition on August 25, 2005, claiming his sentence was unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because he was sentenced above the presumptive guideline range based on aggravating factors not found by a jury. On January 6, 2006, the district court denied Burton's second petition, and the Minnesota Court of Appeals affirmed on January 5, 2007. The

Minnesota Supreme Court denied further review on March 28, 2007, and the United States Supreme Court denied his petition for a writ of certiorari on January 14, 2008.

Burton filed this habeas corpus petition on March 17, 2008. He argued that his sentence was unconstitutional because the judge made factual determinations by a preponderance of the evidence. On April 11, 2008, the magistrate judge[3] issued a report and recommendation, concluding Burton's petition was time barred and should be dismissed. On May 22, 2008, the district court adopted the report and recommendation, determining that *Apprendi* and *Blakely* could not be applied retroactively to Burton's case and that Burton's petition was outside the one-year statute of limitations period. The court also held that *Cunningham* did not apply retroactively, but issued a certificate of appealability on that issue.

II

On appeal, we consider whether *Cunningham* should be applied retroactively to Burton's case. *Cunningham* follows a litany of Supreme Court cases considering whether various sentencing laws violate the Sixth Amendment. The first of these cases is *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

In *Apprendi*, the Court considered whether a sentencing judge could impose an extended term of imprisonment beyond the statutory maximum based on judge-found facts. Apprendi was convicted of an offense punishable by five to ten years' imprisonment. *Id.* at 468. However, he was sentenced to twelve years' imprisonment based on the sentencing judge's finding that he committed the crime with the purpose of intimidating protected groups. *Id.* at 471. The Supreme Court reversed the sentence, holding that "any fact that increases the penalty for a crime beyond the

---

[3]The Honorable Jeanne J. Graham, United States Magistrate Judge for the District of Minnesota.

-3-

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

Four years later, in *Blakely v. Washington*, 542 U.S. 296 (2004), the Court decided what constitutes the "statutory maximum" under *Apprendi*. Blakely pled guilty and faced a statutory maximum of ten years' imprisonment. *Id.* at 299. But Blakely could not be sentenced above a "standard range" of 49 to 53 months unless the sentencing judge found "substantial and compelling reasons justifying an exceptional sentence." *Id.* (citation omitted). After finding that Blakely acted with "deliberate cruelty," the sentencing judge imposed a sentence above the standard range. *Id.* at 303. The Supreme Court held that the statutory maximum for purposes of Sixth Amendment analysis is not the maximum sentence stated by the statute but is "the maximum [a judge] may impose without any additional findings" found by a jury. *Id.* at 303-04 (emphasis omitted). Thus, Blakely's sentence above the statutory maximum violated his Sixth Amendment rights. *Id.* at 305.

The Court next decided *United States v. Booker*, 543 U.S. 220 (2005), which considered what constitutes the "statutory maximum" under the federal sentencing guidelines. The Court held that the upper end of the sentencing guidelines was the statutory maximum and a sentencing judge could not sentence above the guideline range based on his or her own fact finding. *Id.* at 233-35.

Two years later, the Court decided *Cunningham* where it considered the constitutionality of California's determinate sentencing law. Under California's determinate sentencing law, offenses were assigned upper, middle, and lower range maximum sentences. 549 U.S. at 277. Sentencing judges were to impose a sentence in the middle range unless aggravating or mitigating circumstances were present. *Id.* If the judge found aggravating facts present, he or she could sentence in the upper sentencing range. *Id.* The Court held that California's law violated the Sixth Amendment and decided that the middle range was the relevant statutory maximum

-4-

under California law. *Id*. at 288. The Court held that a sentencing judge cannot impose an upper-term sentence unless a jury finds facts supporting aggravating circumstances beyond a reasonable doubt. *Id.* at 288-89.

Burton asserts that his sentence violates *Cunningham* because the sentencing judge increased his sentence based on facts not found by a jury. Before considering the merits of Burton's claim, we must determine whether we can apply *Cunningham* to Burton's sentence. *See Caspari v. Bohlen*, 510 U.S. 383, 389 (1994). "When a Supreme Court decision results in a 'new rule' of criminal procedure, that rule applies to all criminal cases still pending on direct review, but, as to convictions that are already final, the rule applies only in limited circumstances." *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005) (per curiam). Our retroactivity determination is governed by *Teague v. Lane*, 489 U.S. 288 (1989):

> Under *Teague*, the determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step process. First, the court must determine when the defendant's conviction became final. Second, it must ascertain the "legal landscape as it then existed," and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually "new." Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

*Beard v. Banks*, 542 U.S. 406, 411 (2004) (internal citations omitted).

A. Final Conviction

A conviction becomes final "for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Id*. (citation omitted). Burton argues his conviction became final on

August 7, 2000, after the Court decided *Apprendi*. The government argues Burton's conviction became final on December 14, 1999, before the Court decided *Apprendi*. But we need not decide this issue because it does not affect the result in this case. For the purpose of this appeal, we accept Burton's argument that his conviction became final on August 7, 2000.

## B. New Rule

Turning to the second step in *Teague*, we consider whether *Cunningham* announced a "new rule." A "new rule" is one that "breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. A result is dictated by precedent if the unlawfulness of the defendant's conviction was "apparent to all reasonable jurists" when the conviction became final. *Beard*, 542 U.S. at 413.

Both parties agree that the Constitution did not compel the rule announced in *Cunningham* on August 7, 2000, and is a "new rule." We agree with the parties that Burton's sentence was not clearly unlawful when his conviction became final. We acknowledge that *Apprendi* had been decided when Burton's conviction became final and that *Apprendi* prohibited courts from increasing sentences based on judge-found facts. But *Apprendi* did not dictate a conclusion that Burton's conviction was unlawful. *See Teague*, 489 U.S. at 301. *Apprendi* concerned the imposition of a sentence beyond the statutory maximum allowed by New Jersey state law. Apprendi was sentenced to a longer term of imprisonment under a hate crime statute to which he was not charged. *See Apprendi*, 530 U.S. at 468-69.

In contrast to *Apprendi*, Burton's sentences all fell within the maximum sentences allowed by the applicable statutes; he was not sentenced under a statute to which he was not charged. Of course, as previously explained, *Blakely*, 542 U.S. at

303-04, clarified the meaning of "statutory maximum" for purposes of the Sixth Amendment. *See id.* (holding that the statutory maximum for purposes of Sixth Amendment analysis is not the maximum sentence stated by the statute but is "the maximum [a judge] may impose *without* any additional findings" found by a jury). But at the time Burton's conviction became final in 2000, *Blakely* was not part of the legal landscape and did not dictate a different result in this case. *See Teague*, 489 U.S. at 301. Therefore, the legal landscape as of August 7, 2000, did not dictate the result announced in *Cunningham*, as the unlawfulness of Burton's conviction was not "apparent to all reasonable jurists" when his conviction became final. *See Beard*, 542 U.S. at 413. Therefore, we conclude *Cunningham* qualifies as a new rule.

### C. Exceptions to non-retroactivity

Because *Cunningham* is a "new rule," it is generally not subject to retroactive application to cases on collateral review. *Id.* at 416. But there are two exceptions to the general rule. *Teague*, 489 U.S. at 311. A new rule can be retroactively applied if the rule is: (1) substantive in nature; or (2) a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (citation omitted).

### 1.

New substantive rules of criminal procedure apply retroactively. *Id.* at 351. A rule is substantive, as opposed to procedural, when it "narrow[s] the scope of a criminal statute by interpreting its terms," or "place[s] particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351-52. In other words, a rule is substantive "if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 353. "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the

law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352 (internal quotes and citations omitted).

Rules are procedural, on the other hand, when they "regulate only the *manner of determining* the defendant's culpability." *Id.* at 353. Procedural rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352. Procedural rules do not generally apply retroactively because there is a "more speculative connection to innocence." *Id.*

We conclude that *Cunningham* is a procedural rule because it does not change the range of conduct or class of persons that the law punishes; rather it merely altered the manner in which Burton could be sentenced. *Cunningham* changed the method for proving facts to support a sentence.

The United States Supreme Court classified a similar rule as procedural in *Schriro v. Summerlin*, 542 U.S. 348 (2004), when the Court considered whether *Ring v. Arizona*, 536 U.S. 584 (2002), was a procedural rule. In *Schriro*, the Court determined that *Ring*'s holding that a sentencing judge may not increase a sentence based on judge-found facts was a procedural rule because it did not alter the range of conduct the state had criminalized. *Schriro*, 542 U.S. at 353. The Court reasoned that *Ring* "rested entirely on the Sixth Amendment's jury-trial guarantee . . . [and it] altered the range of permissible methods for determining whether a defendant's conduct is punishable by death." *Id.* The Court concluded that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Id.*

Like *Ring*, *Cunningham* alters a sentencing court's "decisionmaking authority," by requiring that a jury find aggravating facts that support an upper-term sentence. *Cunningham* did not alter the range of conduct a state may criminalize. *See id.* Therefore, we conclude *Cunningham* is not a substantive rule and does not qualify for the first exception to nonretroactivity.

2.

Rules that are procedural in nature apply retroactively if they are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard*, 542 U.S. at 417 (internal quotations omitted). This exception is very limited and "is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* (internal quotations omitted). As the Supreme Court has explained, "it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Id.* The Court has rejected arguments that new rules qualify as a watershed rule. *See, e.g., O'Dell v. Netherland*, 521 U.S. 151 (1997) (holding that the rule announced in *Simmons v. South Carolina*, 512 U.S. 154 (1994), that a capital defendant must be allowed to inform the sentencing jury that he would be ineligible for parole if the prosecution argued future dangerousness, was not a watershed rule); *Sawyer v. Smith*, 497 U.S. 227 (1990) (holding that the rule announced in *Caldwell v. Mississippi*, 472 U.S. 320 (1985), that the Eighth Amendment bars imposition of the death penalty if the jury has been led to believe that the responsibility for that ultimate decision lies elsewhere, did not fall within the second *Teague* exception).

The Court has stated that a rule that might fall within this exception is a criminal defendant's right to counsel, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963), which held that a person charged with a crime has a fundamental right to counsel. *See Beard*, 542 U.S. at 418 (holding that *Gideon* so altered the Court's understanding of "the bedrock procedural elements essential to the fairness of a proceeding."). Burton argues *Cunningham* is a procedural rule of watershed magnitude because it concerns the accuracy and fairness of criminal proceedings. Burton maintains that juries are more accurate fact finders and the right to a jury trial is implicit in the concept of ordered liberty.

But the Supreme Court considered and rejected these arguments in *Schriro*, explaining:

> The question here is not, however, whether the Framers believed that juries are more accurate factfinders than judges. . . . Nor is the question whether juries actually *are* more accurate factfinders than judges. . . . Rather, the question is whether judicial factfinding so "*seriously* diminishe[s]" accuracy that there is an "'impermissibly large risk'" of punishing conduct the law does not reach. The evidence is simply too equivocal to support that conclusion.

542 U.S. at 355-56 (citations omitted). The Court then explained that while the right to a jury trial is fundamental in our criminal system, a defendant is not entitled to continue to litigate his claims indefinitely and declined to apply the *Ring* holding retroactively to claims on collateral review. *Id.* at 358. We agree and conclude that *Cunningham* does not so alter the understanding of bedrock procedural elements that it is essential to the fairness of a court proceeding.[4]

Because *Cunningham* is a new procedural rule that is not of watershed magnitude, it cannot be applied retroactively to Burton.

---

[4]Moreover, the Eighth Circuit has consistently held that *Apprendi* and its progeny are not rules of watershed magnitude and has declined to apply those cases retroactively. *See United States v. Moss*, 252 F.3d 993, 997 (8th Cir. 2001) (declining to conclude that *Apprendi* is a procedural rule of watershed magnitude); *United States v. Stoltz*, 149 Fed. Appx. 567, 568-69 (8th Cir. 2005) (declining to apply *Blakely* retroactively because it is not a rule of watershed magnitude); *see also Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005) (holding that *Booker* does not apply retroactively). Further, we note that the Third Circuit likewise concluded that *Cunningham* did not announce a watershed rule in *Reinhold v. Rozum*, 604 F.3d 149, 156 (3d Cir. 2010).

III

Burton also argues his habeas corpus petition was timely, even if *Cunningham* is not applied retroactively. He further contends that even if his petition was untimely, the statute of limitations should be equitably tolled.

The certificate of appealability requested that we consider whether *Cunningham* is to be applied retroactively to Burton's case. We construe Burton's timeliness arguments as a motion to expand the certificate of appealability. So construed, we deny the motion and do not decide Burton's remaining claims.

IV

Accordingly, we affirm the district court's order.

_____