# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3676

_____

LaMonte Rydell Martin

*Petitioner - Appellant*

v.

Jessica Symmes, Warden, Oak Park Heights Facility, Minnesota

*Defendant - Appellee*

------------------------------

Juvenile Law Center; Campaign for the Fair Sentencing of Youth; Children's Law Center of Los Angeles; Council on Crime and Justice; Defender Association of Philadelphia; ISAIAH; Juvenile Justice Project of Louisiana; Juvenile Justice Initiative; Legal Rights Center; National Association of Criminal Defense Lawyers; National Center for Youth Law; National Juvenile Defender Center; National Juvenile Justice Network; National Legal Aid & Defender Association; The Orleans Public Defenders; The Pacific Juvenile Defender Center; The Public Defender Service for the District of Columbia; Rutgers School of Law - Camden Children's Justice Clinic; San Francisco Office of the Public Defender; Youth Law Center; Stephen K. Harper; Kristin Henning; Frank Vandervort

*Amici on Behalf of Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 12, 2014
Filed: April 6, 2015

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A Minnesota jury convicted LaMonte Rydell Martin of first-degree murder, committed at age 17. Martin received a mandatory life sentence without possibility of release. The Minnesota Supreme Court affirmed and also rejected a challenge to the jury's composition under *Batson v. Kentucky*, 476 U.S. 79 (1986). ***State v. Martin***, 773 N.W.2d 89, 104, 110 (Minn. 2009).

Martin filed a habeas petition under 28 U.S.C. § 2254. While it was pending, the U.S. Supreme Court held that mandatory life sentences without parole for defendants who commit homicide before age 18 violate the Eighth Amendment. ***Miller v. Alabama***, 132 S. Ct. 2455, 2460, 2475 (2012). The magistrate judge[1] ordered briefing, and Martin argued that *Miller* applied retroactively to him.

The district court[2] denied the petition, but granted a certificate of appealability on the *Miller* and *Batson* issues. ***Martin v. Symmes***, 2013 WL 5653447, at *17 (D. Minn. Oct. 15, 2013). Having jurisdiction under 28 U.S.C. §§ 1291 and 2253, this court affirms.

_____

[1]The Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota.

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

I.

In *Miller*, the Court relied on its prior juvenile-sentencing decisions. **Miller**, 132 S. Ct. at 2463, *citing* **Roper v. Simmons**, 543 U.S. 551, 578 (2005) (categorically barring death sentences for offenders under 18) *and* **Graham v. Florida**, 560 U.S. 48, 82 (2010) (categorically barring life sentences without possibility of parole for juveniles convicted of non-homicide offenses). "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, [a mandatory] scheme poses too great a risk of disproportionate punishment." **Id.** at 2469. Now, sentencers must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." **Id.**

*Miller* consolidated the appeals of Evan James Miller (on direct review) and Kuntrell O'Bryan Jackson (on collateral review), both of whom had received mandatory life sentences without parole for murders committed at age 14. **Id.** at 2460, 2461, 2462. *See also* **Miller v. State**, 63 So. 3d 676, 691 (Ala. Crim. App. 2010) (affirming Miller's mandatory life sentence); **Jackson v. Norris**, 378 S.W.3d 103, 106 (Ark. 2011) (declining to extend *Roper* and *Graham* to non-death sentences for juvenile homicide defendants and affirming dismissal of Jackson's state habeas petition). The *Miller* opinion reversed both cases. **Miller**, 132 S. Ct. at 2475.[3]

---

[3]On March 23, 2015, the Court granted certiorari in *Montgomery v. Louisiana*, which presents the retroactivity of *Miller* and whether the Court has "jurisdiction to decide whether the Supreme Court of Louisiana correctly refused to give retroactive effect to" *Miller*. **Montgomery v. Louisiana**, 2015 WL 1280236, at *1 (U.S. Mar. 23, 2015).

A.

Generally, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." **Teague v. Lane**, 489 U.S. 288, 310 (1989). It is undisputed that *Miller* announced a new rule and that Martin's conviction became final before *Miller*. "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." **Whorton v. Bockting**, 549 U.S. 406, 416 (2007) (internal quotation marks and alteration omitted).

1.

Substantive rules "alter[] the range of conduct or the class of persons that the law punishes," but procedural rules "regulate only the *manner of determining* the defendant's culpability." **Schriro v. Summerlin**, 542 U.S. 348, 353 (2004). New substantive rules include "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." **Penry v. Lynaugh**, 492 U.S. 302, 330 (1989), *abrogated on other grounds by* **Atkins v. Virginia**, 536 U.S. 304, 321 (2002) (prohibiting execution of mentally retarded criminals).[4] "Such rules apply retroactively because they necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him." **Schriro**, 542 U.S. at 352 (internal quotation marks omitted).

---

[4]*Atkins* "was made retroactive to cases on collateral review by" *Penry*. **Davis v. Norris**, 423 F.3d 868, 879 (8th Cir. 2005). *See* **Penry**, 492 U.S. at 330 ("[I]f we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review."). Neither this court nor the Supreme Court has ruled on the retroactivity of *Roper* and *Graham*.

-4-

*Miller* announced a procedural rule, not a substantive rule. The Court eliminated *mandatory* life sentences without parole for juvenile homicide defendants; it did not eliminate those *sentences*: "[W]e think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," but "we do not foreclose a sentencer's ability to make that judgment in homicide cases . . . ." *Miller*, 132 S. Ct. at 2469. Thus, *Miller* does not prohibit a category of punishment (life sentences without parole) for a class of defendants (juveniles) because of their status (age). *See **Penry***, 492 U.S. at 330. In other words, Martin does not "face[] a punishment that the law cannot impose upon him." *See **Schriro***, 542 U.S. at 352.

Martin argues that *Miller* is substantive because it eliminated "an entire line of sentencing" and "created an expanded range of [sentencing] outcomes" by making "age an element" for juvenile homicide defendants. This argument ignores the Court's characterization of *Miller*:

> Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain *process*—considering an offender's youth and attendant characteristics—before imposing a particular penalty.

*Miller*, 132 S. Ct. at 2471 (emphasis added). *See ***Black's Law Dictionary*** 1242 (8th ed. 2004) (defining "process" as "[t]he proceedings in any action"); **Webster's International Dictionary** 1808 (3d ed. 1961) (defining "process" as "the course of procedure in a judicial action").

2.

A "watershed" rule "must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'" ***Schriro***, 542 U.S. at 352, *quoting **Teague***, 489 U.S. at 313. The "watershed" exception "is clearly meant to apply only to a small

core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." **Beard v. Banks**, 542 U.S. 406, 417 (2004), *quoting* **O'Dell v. Netherland**, 521 U.S. 151, 157 (1997). The "new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." **Bockting**, 549 U.S. at 421.

The Court has never found a new procedural rule to be "watershed." **Johnson v. Ponton**, 2015 WL 924049, at *3 (4th Cir. Mar. 5, 2015). *See, e.g.*, **Gilmore v. Taylor**, 508 U.S. 333, 345 (1993) (rejecting as "watershed" new rule that jury instructions in murder cases must allow for consideration of diminished mental state); **Butler v. McKellar**, 494 U.S. 407, 416 (1990) (rejecting as "watershed" new rule barring police-initiated interrogation after a request for counsel). *Cf.* **Beard**, 542 U.S. at 417 (noting that *Gideon v. Wainwright*'s guarantee of right to counsel "*might* fall within this exception") (emphasis added).

*Miller* is not a "watershed" rule of criminal procedure. It does not "constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *See* **Bockting**, 549 U.S. at 421. Rather, the Court recognized that *Miller* "flow[ed] straightforwardly from our precedents." **Miller**, 132 S. Ct. at 2471. Nor does the absence of *Miller* seriously diminish "the likelihood of an accurate *conviction*." **Schriro**, 542 U.S. at 352 (emphasis added). *Miller* creates procedural safeguards for sentencing juveniles; it says nothing about those defendants' underlying convictions.

Because *Miller* "is a new procedural rule that is not of watershed magnitude, it cannot be applied retroactively to" Martin under the *Teague* exceptions. *See* **Burton v. Fabian**, 612 F.3d 1003, 1011 (8th Cir. 2010).

B.

According to Martin, *Miller* is retroactive because the Court granted relief to Jackson on collateral review. *See **Miller***, 132 S. Ct. at 2475. Martin and his amici cite *Teague*:

> We can simply refuse to announce a new rule in a given case unless the rule would be applied retroactively to the defendant in the case and to all others similarly situated. We think this approach is a sound one.

***Teague***, 489 U.S. at 316 (citation omitted) ("Because a decision extending the fair cross section requirement to the petit jury would not be applied retroactively to cases on collateral review under the approach we adopt today, we do not address petitioner's claim.").

The Court's reversal of Jackson's case in *Miller*—without discussing retroactivity—does not establish that *Miller* is retroactive to Martin. He ignores dicta from this court, sitting en banc, that a rule is not retroactive "[a]bsent an express pronouncement on retroactivity from the Supreme Court." ***Moore v. Kinney***, 320 F.3d 767, 771 n.3 (8th Cir. 2003) (en banc), *citing **Tyler v. Cain***, 533 U.S. 656, 663 (2001) (holding that "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive") (internal quotation marks omitted). The Court has also implied that its application of a new rule on collateral review does not necessitate that rule's application to other cases on collateral review. *See **Chaidez v. United States***, 133 S. Ct. 1103, 1105 (2013) (declining to find retroactive the new rule announced—and applied to petitioner seeking collateral relief—in *Padilla v. Kentucky*, 559 U.S. 356, 359, 374 (2010), that counsel must inform client that plea carries risk of deportation).

C.

Martin argues that "Eighth Amendment cases are, by definition, retroactive." That is, "there is a fundamental unfairness in having a rule that only applies to cases going forward" when the rule "is based on a fundamental characteristic of a group of offenders" and when "our understanding of the characteristics of that group has changed."

Martin cites no authority for this argument. Rather, the Court has held that some remedies for Eighth Amendment violations are not retroactive. *See, e.g.,* **Beard**, 542 U.S. at 408 (holding non-retroactive the new rule announced in *Mills v. Maryland*, 486 U.S. 367, 384 (1988), and *McKoy v. North Carolina*, 494 U.S. 433, 444 (1990), that capital sentencing schemes requiring juries to disregard mitigating factors not found unanimously are invalid); *Sawyer v. Smith*, 497 U.S. 227, 245 (1990) (holding non-retroactive the new rule announced in *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985), that jury cannot be "led to believe that responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case").

D.

This court's holding that *Miller* does not apply retroactively on collateral review is consistent with rulings from the other circuits to address the issue. *See* **Ponton**, 2015 WL 924049, at *5 ("We therefore hold that the Supreme Court has not held the *Miller* rule retroactively applicable, and that the Court's holdings do not dictate retroactivity because the rule is neither substantive nor a watershed rule of criminal procedure."). *Cf.* **In re Morgan**, 713 F.3d 1365, 1367-68 (11th Cir.) (denying leave to file successive habeas petition based on *Miller* because Court has not made *Miller* retroactive and because court disagreed "that *Miller* is necessarily retroactive because any rule that expands the range of possible sentencing outcomes

for a category of defendants by requiring that the sentencer have the option of imposing a lesser sentence is substantive"), *reh'g en banc denied*, 717 F.3d 1186 (2013); ***Craig v. Cain***, 2013 WL 69128, at \*2-3 (5th Cir. Jan. 4, 2013) (per curiam) (unpublished) (denying motion to reconsider denial of certificate of appealability in light of *Miller* because *Miller* does not satisfy either *Teague* exception). *But cf.* ***In re Simpson***, 555 Fed. Appx. 369, 371 & n.2, 372 (5th Cir. 2014) (per curiam) (acknowledging *Craig* but granting leave to file successive habeas petition based on prima facie finding that *Miller* is retroactive).[5]

State high courts are split. Five held that *Miller* is not retroactive. ***Ex parte Williams***, 2015 WL 1388138, at \*13 (Ala. Mar. 27, 2015); ***People v. Carp***, 852 N.W.2d 801, 832 (Mich. 2014); ***State v. Tate***, 130 So. 3d 829, 841 (La. 2013); ***Commonwealth v. Cunningham***, 81 A.3d 1, 10 (Pa. 2013); ***Chambers v. State***, 831 N.W.2d 311, 331 (Minn. 2013). Ten held that *Miller* is retroactive. *See* ***Falcon v. State***, 2015 WL 1239365, at \*9 (Fla. Mar. 19, 2015); ***Aiken v. Byars***, 765 S.E.2d 572, 578 (S.C. 2014); ***State v. Mares***, 335 P.3d 487, 508 (Wyo. 2014); ***Petition of State***, 103 A.3d 227, 236 (N.H. 2014); ***People v. Davis***, 6 N.E.3d 709, 722-23 (Ill. 2014); ***Ex parte Maxwell***, 424 S.W.3d 66, 75 (Tex. Crim. App. 2014); ***State v. Mantich***, 842 N.W.2d 716, 731 (Neb. 2014); ***Diatchenko v. Dist. Att'y for Suffolk Dist.***, 1 N.E.3d 270, 281 (Mass. 2013); ***State v. Ragland***, 836 N.W.2d 107, 117 (Iowa 2013); ***Jones v. State***, 122 So. 3d 698, 703 (Miss. 2013).

---

[5]This court has granted leave to file a successive habeas petition based on a prima facie finding that *Miller* is retroactive when the government conceded retroactivity. *See* ***Johnson v. United States***, 720 F.3d 720, 720-21 (8th Cir. 2013) (per curiam) (noting that "a prima facie showing in this context is simply a sufficient showing of possible merit to warrant a fuller exploration by the district court," not a decision on the merits) (internal quotation marks omitted). *See also, e.g.*, ***Williams v. United States***, No. 13-1731 (8th Cir. Aug. 29, 2013) (order) (granting without comment leave to file successive habeas petition in light of *Miller*); ***Castillo v. Legrand***, 2015 WL 738342, at \*1 (9th Cir. Feb. 23, 2015) (same).

II.

Martin challenges the government's strike of Juror 43, an African-American man. "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Batson*, 476 U.S. at 89.

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (internal citations omitted).

Juror 43 said a cousin served time. Questioned by the court, Juror 43 said he did not "know the facts of what happened," but believed the cousin may have been wrongly convicted because relatives said so. In a juror questionnaire asking for opinions of the criminal justice system, Juror 43 wrote a question: "Do African Americans/minorities receive the same treatment as non-minorities?" Orally, Juror 43 said he questioned whether minorities are "treated equally when there is a hearing and when punishment or time to be served is fair." Juror 43 also said "yes" when asked whether he "generally" thought "persons of color are receiving harsher punishments" and when asked whether he thought "there perhaps is some disparate treatment based on race."[6] Questioned further by the court, Juror 43 said he and the victim's uncle work together in the Child Protection Department of Hennepin County.

---

[6]Juror 43 answered "no" when asked, "Do you believe that your perceptions about the criminal justice system and its equal or unequal treatment of persons of color would affect your ability to be a fair and impartial juror if selected as a juror in this case?"

-10-

They occasionally say "hi" to each other and once spent 8-10 hours on a work-related car ride.

The government moved to strike Juror 43; the court denied it, but permitted the government to question him. He revealed that his cousin's conviction occurred in Hennepin County and "had something to do with a punishment of his child or some injuries." Juror 43 also said he "had conversations with people who don't seem to understand why minorities are incarcerated for the length of time or for certain types of crimes. . . . Am I taking it as a fact? No. But it is something that stays in my mind."

The government renewed its strike, offering as bases that (1) Juror 43 "thinks people of color receive harsher treatment, but has no basis for that, at least he's not articulating a basis," and (2) Juror 43 believed his cousin may have been wrongly convicted "but cannot articulate a basis for that other than" his family told him so. (The government did not mention Juror 43's association with the victim's uncle.) This time, the court sustained the strike, over Martin's *Batson* challenge. Comparing the jurors, the court concluded that Martin "failed to demonstrate purposeful discrimination." Reviewing for clear error, the Minnesota Supreme Court affirmed:

> The court supported its conclusions with findings that the responses of Juror 43 about the fairness of the criminal justice system toward African Americans and his cousin's conviction were not "forthcoming." The district court noted that Juror 43 did not provide specific reasons or facts underlying his views on these subjects. And the district court expressed concern that Juror 43 believed that his cousin may have been wrongfully convicted, and the juror worked with the victim's uncle. On this record, we cannot say that the findings of the district court are clearly erroneous. We have consistently held that a family member's involvement with the legal system is a legitimate race-neutral reason for the State to exercise a peremptory challenge.

*Martin*, 773 N.W.2d at 103-04. Two justices dissented, concluding "that when the views expressed by a prospective juror during voir dire are consistent with what this court has found in its own review of whether African Americans are treated unfairly in our judicial system, those views cannot constitute a legitimate non-discriminatory reason that would support the juror's exclusion." *Id.* at 110 (Page, J., dissenting).

A claim that "state courts unreasonably determined that the prosecutor's strikes were not motivated by race is a factual determination subject to the standard" from 28 U.S.C. § 2254(d)(2). *Edwards v. Roper*, 688 F.3d 449, 454 (8th Cir. 2012). This court "must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006), *quoting* **§ 2254(d)(2)**. Further, "a state court's factual determinations 'shall be presumed to be correct,' and [Martin] has 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Edwards*, 688 F.3d at 454, *quoting* **§ 2254(e)(1)**. "The standard is demanding but not insatiable," and "deference does not by definition preclude relief." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("*Miller-El II*") (internal quotation marks and alteration omitted).

Martin argues that (1) Juror 43's concern about minorities' experience in the criminal justice system is not a race-neutral reason for striking him, and (2) comparative juror analysis shows that the reasons for striking Juror 43 were not "applied equally across the races." In effect, Martin argues that the Minnesota Supreme Court "unreasonably determined that the prosecutor's strike[] [was] not motivated by race." *See Edwards*, 688 F.3d at 454. Martin does not dispute the state court's application of *Batson*, a legal question subject to a different standard. *See id.*, *citing* **§ 2254(d)(1)** (requiring state court decision be "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").

-12-

Martin's first argument implicates *Batson*'s second step, which "does not demand an explanation that is persuasive, or even plausible." *See **Purkett v. Elem***, 514 U.S. 765, 767-68 (1995) (per curiam). Rather, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." ***Id.*** at 768, *quoting **Hernandez v. New York***, 500 U.S. 352, 360, 371 (1991) (holding that "a race-neutral reason . . . means a reason other than race"). It is not *inherently* discriminatory to strike a juror because of his concern about minorities' experience in the criminal justice system. *See **id.*** A prosecutor could strike a white juror expressing the same views. *See **United States v. Walley***, 567 F.3d 354, 357 (8th Cir. 2009) (*Batson* inquiry "determine[s] whether the strike was based on the prospective *juror's race*") (emphasis added).

Martin's second argument implicates *Batson*'s third step. "Striking a black panelist for reasons that apply 'just as well to an otherwise-similar nonblack who is permitted to serve' is evidence tending to prove purposeful discrimination." ***Edwards***, 688 F.3d at 454, *quoting **Miller-El II***, 545 U.S. at 241. This court upholds "very fine" distinctions between jurors. ***United States v. Morrison***, 594 F.3d 626, 630, 633 (8th Cir. 2010) (affirming strike of black juror because she had not been forthcoming about family member's legal troubles and because her husband had drinking problem, while white juror served whose son had four DWI offenses), *citing **United States v. Davis***, 154 F.3d 772, 781 (8th Cir. 1998) (finding sufficient difference between drug counselor and drug prevention volunteer). *Cf. **Snyder v. Louisiana***, 552 U.S. 472, 480, 483 (2008) ("implausibility" of striking black juror with student-teaching obligations who indicated trial would cause scheduling conflicts was "reinforced by the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appear to have been at least as serious as" black juror's).

-13-

The Minnesota dissent noted that Juror 14, a white woman, served despite initially responding "Yes" when the questionnaire asked for "any specific concerns or complaints about the criminal justice system as it relates to its treatment of persons of color." *Martin*, 773 N.W.2d at 110 (Page, J., dissenting). Juror 14 crossed out "Yes," changed her answer to "No," and wrote "I do not have any *specific* concerns, but I do think it is biased against people of color." *Id.* However, Martin did not object when the trial court said that Juror 14 "responded in the questionnaire that she thinks the jury system in this country is a fair system. Whereas [Juror 43] responded that he does not think the jury system in this country is a fair system." Martin next notes that Juror 64, a white man, served despite previously working in the same location as the victim's aunt. Juror 43 *works* with the victim's uncle (and the two once spent 8-10 hours in a car). Martin finally notes that five white jurors served despite personal or family involvement in the criminal justice system. But Martin presents no evidence that any of them had concerns like Juror 43's questions about his cousin's conviction. In sum, Martin "has not identified one juror who shared each of the qualities that the government cited as a reason for dismissing" Juror 43. *See Morrison*, 594 F.3d at 633. He fails to satisfy his "burden of rebutting the presumption of correctness by clear and convincing evidence." **§ 2254(e)(1)**.

The Minnesota Supreme Court did not unreasonably determine that the trial court properly rejected Martin's *Batson* challenge.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____