J-S60012-15
J-S60013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| IVORY KING, | |
| Appellant | No. 3323 EDA 2014 |

Appeal from the PCRA Order dated November 7, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003727-1998

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN LEKKA, | |
| Appellant | No. 3333 EDA 2014 |

Appeal from the PCRA Order dated November 7, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0001295-1978

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 23, 2016**

Appellant, Ivory King (King), appeals from the order denying, as untimely, his petition for collateral review filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant, John Lekka (Lekka), appeals from the order denying, as untimely, his PCRA petition.  Both King and Lekka present the same issue for our review:

whether the United States Supreme Court's decision in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), is retroactive in effect, so as to satisfy the retroactivity exception to the PCRA's time-bar, 42 Pa.C.S. §§ 9545(b)(1)(iii) ("retroactively exception"). In both cases, the PCRA court ruled that *Miller* was not retroactive due to the Pennsylvania Supreme Court's decision in *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013). In light of the United States Supreme Court's recent decision in *Montgomery v. Louisiana*, No. 14-280, 2016 WL 280758 (U.S. 2016), which effectively overruled *Cunningham* on the question of *Miller*'s retroactivity, we hold that *Miller* is retroactive and, therefore, it satisfies the PCRA's retroactivity exception. Accordingly, we reverse the orders denying Appellants' PCRA petitions, vacate their life-without-parole sentences, and remand for further proceedings.

We begin by briefly summarizing the factual and procedural histories of the cases before us. On November 15, 1979, Lekka was sentenced to life imprisonment without the possibility of parole, following his conviction for first-degree murder and conspiracy. Lekka's conviction arose from his participation in the killing of seventeen-year-old Diane Goeke, the girlfriend of Lekka's co-defendant, Robert Buli. Following the discovery of Goeke's body in a wooded area of Bucks County, Lekka and Buli admitted to killing Goeke. The murder occurred in 1978, when Lekka was seventeen years old.

Lekka filed a direct appeal on December 14, 1979, but withdrew it four days later. He filed his first PCRA petition on July 8, 2010. The PCRA court

dismissed that petition on October 27, 2010; that decision was affirmed by this Court on August 24, 2011, and Lekka's petition for allowance of appeal to our Supreme was denied on December 23, 2011. **Commonwealth v. Lekka**, 32 A.3d 841 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 34 A.3d 82 (Pa. 2011).

The matter before us concerns Lekka's second PCRA petition (Lekka's Petition), filed on August 13, 2012. Therein, Lekka asserted that he was entitled to a new sentencing hearing based on **Miller**, arguing that **Miller** satisfied the PCRA's retroactivity exception, thus allowing consideration of his otherwise untimely petition. On December 10, 2012, the PCRA court issued an order deferring its ruling on Lekka's Petition pending the Pennsylvania Supreme Court's decision in **Cunningham**. On January 1, 2014, after **Cunningham** was decided, the PCRA court issued a second order staying its decision on Lekka's Petition pending the United States Supreme Court's review of Cunningham's petition for a writ of *certiorari*. Cunningham's petition for a writ of *certiorari* was denied on June 9, 2014. **Cunningham v. Pennsylvania**, 134 S.Ct. 2724 (2014). The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Lekka's Petition on October 3, 2014. Lekka filed a timely response, but the PCRA court ultimately dismissed Lekka's Petition by order dated November 7, 2014. Lekka filed a timely notice of appeal with this Court on November 18, 2014.

Lekka had preemptively filed a Pa.R.A.P. 1925(b) statement on July 25, 2014, which the PCRA court addressed in its Rule 1925(a) opinion, filed

- 3 -

on April 13, 2015. The timing of Lekka's Rule 1925(b) statement is immaterial, however, as the PCRA court never issued an order demanding a Rule 1925(b) statement.

On October 28, 1998, King was sentenced to four consecutive terms of life imprisonment without the possibility of parole, following his conviction on four counts of first-degree murder and related offenses. King's conviction stemmed from a mass murder that occurred at a house party in Bristol Borough earlier that same year, when King was seventeen years old. At trial, Appellant did not contest that he had killed the four victims; instead, he only contested his degree of guilt.

It does not appear that King filed a direct appeal. Instead, he filed a PCRA petition, his first, on September 17, 1999. King withdrew that petition on November 23, 1999. King filed a second PCRA petition in 2005, which was denied by the PCRA court. This Court dismissed King's appeal from that decision on January 12, 2006, when he failed to file a brief. King filed his third PCRA petition on September 11, 2007, which was denied by the PCRA court on March 3, 2008. He filed his fourth PCRA petition on June 4, 2010, which was denied by the PCRA court on August 18, 2010. King did not appeal from the orders denying his third and fourth PCRA petitions.

The matter before us concerns King's fifth PCRA petition (King's Petition), filed on July 5, 2012, wherein, by amendment of appointed counsel

on October 21, 2012, King requested a new sentencing hearing, invoking the *Miller* decision to satisfy the PCRA's retroactivity exception.[1]  On December 10, 2012, the PCRA court issued an order deferring its ruling on King's Petition pending the Pennsylvania Supreme Court's decision in *Cunningham*.  On January 1, 2014, after *Cunningham* was decided, the PCRA court issued a second order staying its decision on King's Petition pending the United States Supreme Court's review of Cunningham's petition for a writ of *certiorari*.  Cunningham's petition for a writ of *certiorari* was denied on June 9, 2014.  The PCRA court issued a Rule 907 notice of its intent to dismiss King's Petition on October 3, 2014.  King filed a timely response on October 20, 2014.  The PCRA court subsequently dismissed King's Petition by order dated November 7, 2014.  King filed a timely notice of appeal on November 18, 2014.

King also had preemptively filed a Rule 1925(b) statement on July 25, 2014, which the PCRA court addressed in its Rule 1925(a) opinion, dated May 28, 2015.  As is true with respect to Lekka, the timing of King's Rule 1925(b) statement is immaterial, as the PCRA court never issued an order in his case demanding a Rule 1925(b) statement.

Appellants, King and Lekka, are both represented by Stuart Wilder, Esq.  They raise identical issues and seek the same relief in their respective

---

[1] Other matters were raised in King's Petition; however, King is only raising his *Miller* issue in this appeal.

appeals, which stem from similar procedural circumstances. Accordingly, for ease of disposition, we consolidate their appeals in this memorandum. Appellants present the following question for our review:

> Did the lower court err when it denied … Appellant's PCRA petition, as he currently serves a sentence the Supreme Court of the United States deemed unconstitutionally cruel and unusual, and whose prohibition must be applied retroactively?

King's Brief, at 4; Lekka's Brief, at 4.[2]

Initially, we reiterate that our standard of review regarding an order denying post conviction relief under the PCRA is whether the determination of the court is supported by the evidence of record and is free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. **Commonwealth v. Touw**, 781 A.2d 1250, 1252 (Pa. Super. 2001). "However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

---

[2] Additionally, Appellants each petitioned this Court to stay their appeals pending the outcome in **Montgomery**. Those petitions were denied, but without prejudice to each Appellant's right to raise that matter in their briefs. Appellants both reasserted their requests to stay disposition pending **Montgomery** in their respective briefs, and we held their cases until **Montgomery** was decided.

The issue before us is whether the PCRA court correctly ruled that Appellants' claims failed to satisfy a timeliness exception to the PCRA's one-year time-bar. The PCRA's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies. That section states, in relevant part:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> >
> > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> >
> > (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, it is conceded that Appellants' PCRA petitions are untimely. They must, therefore, avail themselves of one the timeliness exceptions for this Court to have jurisdiction to review the merits of their claims. As noted above, Appellants argue the applicability of the retroactivity exception set forth in Section 9545(b)(1)(iii). The PCRA court denied Appellants' petitions because it determined that it "must follow the holding in … **Cunningham** that **Miller** does not apply retroactively." Lekka's PCRA Opinion, 4/13/15, at 12; King's PCRA Opinion, 5/28/15, at 12 (quoting Lekka's PCRA Opinion, 4/13/15, at 12).

The line of Eighth Amendment jurisprudence at issue began with the United States Supreme Court's landmark decision in **Roper v. Simmons**, 543 U.S. 551 (2005), which held that the Eighth Amendment prohibits capital punishment for crimes committed by juveniles. The Supreme Court took another step in **Graham v. Florida**, 556 U.S. 1220 (2009), extending the reasoning of **Roper** to bar sentences of life imprisonment for non-homicide crimes committed by juveniles. Finally, in **Miller**, relying on **Roper** and **Graham**, the United States Supreme Court held that the Eight Amendment also prohibits *mandatory*, life-without-parole sentences for juveniles.

In Pennsylvania, this line of decisions has had a dramatic effect on the treatment of juveniles convicted of first- or second-degree murder. Prior to *Roper*, the crimes of first- and second-degree murder could only result in capital punishment (for first-degree murder) or life imprisonment without the possibility of parole (LWOP). *See* 18 Pa.C.S. § 1102(a)-(b) (pre-2012 amendment). Consequently, after *Roper*, the only sentence applicable to juveniles who committed either first- or second-degree murder in Pennsylvania was LWOP. *Graham* has had less of an effect, as only a few non-homicide crimes carry the penalty of life imprisonment in Pennsylvania. *See e.g.*, 42 Pa.C.S. § 9720.2. *Miller*, however, effectively eliminated all sentencing options for juveniles who committed first- or second-degree murder in Pennsylvania. Consequently, in reaction to *Miller*, Pennsylvania's Legislature amended 18 Pa.C.S. § 1102 to add 18 Pa.C.S. § 1102.1, which provides a separate sentencing scheme for juveniles convicted of first- or second-degree murder "after June 24, 2012[.]" 18 Pa.C.S. § 1102.1(a), (c). *Miller* was decided on June 25, 2012.

Left unresolved in the immediate wake of *Miller* was whether that decision was to be afforded retroactive effect. In Pennsylvania, that question was (mostly) resolved in *Cunningham*. In *Cunningham*, our Supreme Court considered a timely PCRA petition wherein the petitioner claimed that his 2002 mandatory LWOP sentence, imposed for a second-

degree murder he committed as a juvenile, had violated the Eighth Amendment's prohibition of cruel and unusual punishments.[3]    Applying ***Teague v. Lane***, 489 U.S. 288 (1989) (plurality),[4] the ***Cunningham*** Court flatly rejected Cunningham's argument that ***Miller*** is a substantive constitutional rule entitled to retroactive effect under ***Teague***, concluding that, "by its own terms," ***Miller*** "is procedural and not substantive for purposes of ***Teague***." ***Cunningham***, 81 A.3d at 1.   The Court did not

_____

[3] Cunningham originally had relied on ***Roper*** to make this argument in the PCRA court. ***Cunningham***, 81 A.3d at 2.

> The post-conviction court denied the petition without an evidentiary hearing, and the Superior Court affirmed in a memorandum opinion, concluding that ***Roper*** had no bearing on life sentences. [The a]ppellant filed a petition for allowance of appeal, which was held in abeyance pending the disposition of a petition seeking discretionary review before this Court in ***Commonwealth v. Batts***, [66 A.3d 26 (Pa. 2013)].  The ***Batts*** case concern[ed] a challenge to the imposition of a mandatory life sentence for crimes committed by a minor asserted on direct appeal.

***Cunningham***, 81 A.3d at 2.   ***Miller*** was decided while a decision in ***Cunningham*** was still pending.  Consequently, the Pennsylvania Supreme Court permitted the parties in ***Cunningham*** to supplement and/or reargue their positions in light of ***Miller***. ***Id.*** at 5.

[4] As the ***Cunningham*** Court explained, ***Teague*** and its progeny expressed a general rule that new constitutional rules are not subject to retroactive effect, subject to two exceptions. ***Cunningham***, 81 A.3d at 4.  The ***Teague*** exceptions are for "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense, … and watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  ***Id.*** (internal citations omitted).

- 10 -

consider an alternative argument for retroactivity—whether **Miller** constituted a 'watershed rule of criminal procedure'—because Cunningham had "not developed his arguments in such terms." **Id.** The Pennsylvania Supreme Court's decision in **Cunningham**, that **Miller** does not apply retroactively, mirrored the decisions of at least four other states, including Louisiana; however, at least ten states ruled that **Miller** is retroactive.[5]

In **Montgomery**, the United States Supreme Court finally addressed the split in state decisions that had considered **Miller**'s retroactivity.

_____

[5] The Eighth Circuit recognized a split in state jurisdictions considering **Miller**'s retroactivity, as they stood less than a year before **Montgomery** was decided:

> State high courts are split. Five held that **Miller** is not retroactive. **Ex parte Williams**, ––– So.3d ––––, ––––, 2015 WL 1388138, at *13 (Ala. Mar. 27, 2015); **People v. Carp**, 496 Mich. 440, 852 N.W.2d 801, 832 (2014); **State v. Tate**, 130 So.3d 829, 841 (La. 2013); **Commonwealth v. Cunningham**, 622 Pa. 543, 81 A.3d 1, 10 (2013); **Chambers v. State**, 831 N.W.2d 311, 331 (Minn. 2013). Ten held that **Miller** is retroactive. **See Falcon v. State**, ––– So.3d ––––, ––––, 2015 WL 1239365, at *9 (Fla. Mar. 19, 2015); **Aiken v. Byars**, 410 S.C. 534, 765 S.E.2d 572, 578 (2014); **State v. Mares**, 335 P.3d 487, 508 (Wyo. 2014); **Petition of State**, 166 N.H. 659, 103 A.3d 227, 236 (2014); **People v. Davis**, 379 Ill.Dec. 381, 6 N.E.3d 709, 722–23 (Ill. 2014); **Ex parte Maxwell**, 424 S.W.3d 66, 75 (Tex.Crim.App. 2014); **State v. Mantich**, 287 Neb. 320, 842 N.W.2d 716, 731 (2014); **Diatchenko v. Dist. Att'y for Suffolk Dist.**, 466 Mass. 655, 1 N.E.3d 270, 281 (2013); **State v. Ragland**, 836 N.W.2d 107, 117 (Iowa 2013); **Jones v. State**, 122 So.3d 698, 703 (Miss. 2013).

**Martin v. Symmes**, 782 F.3d 939, 945 (8th Cir. 2015), _abrogated by_ **Montgomery, supra**.

Applying **Teague**, the **Montgomery** Court held "that **Miller** announced a

substantive rule of constitutional law." **Montgomery**, 2016 WL 280758, at

*15.  Contrary to our Supreme Court's reasoning in **Cunningham** that the

rule announced in **Miller** was purely procedural in nature, the **Montgomery**

Majority reasoned:

> To be sure, **Miller**'s holding has a procedural component. **Miller** requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence.  Louisiana contends that because **Miller** requires this process, it must have set forth a procedural rule.  This argument, however, conflates a procedural requirement necessary to implement a substantive guarantee with a rule that "regulate[s] only the manner of determining the defendant's culpability."  There are instances in which a substantive change in the law must be attended by a procedure that enables a prisoner to show that he falls within the category of persons whom the law may no longer punish.  For example, when an element of a criminal offense is deemed unconstitutional, a prisoner convicted under that offense receives a new trial where the government must prove the prisoner's conduct still fits within the modified definition of the crime.  In a similar vein, when the Constitution prohibits a particular form of punishment for a class of persons, an affected prisoner receives a procedure through which he can show that he belongs to the protected class.  Those procedural requirements do not, of course, transform substantive rules into procedural ones.
>
> The procedure **Miller** prescribes is no different.  A hearing where "youth and its attendant characteristics" are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not.  The hearing does not replace but rather gives effect to **Miller**'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.

**Montgomery**, at *14 (internal citations omitted).

- 12 -

Thus, the **Montgomery** Court concluded that: "Like other substantive rules, **Miller** is retroactive because it 'necessarily carr[ies] a significant risk that a defendant'—here, the vast majority of juvenile offenders—'faces a punishment that the law cannot impose upon him.'" **Montgomery**, at *13. Accordingly, **Montgomery** has effectively overruled our Supreme Court's decision in **Cunningham** regarding **Miller**'s retroactivity.

Turning back to the instant matter, it is well-settled that:

> Subsection (iii) of Section 9545[(b)(1)] has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or [the Supreme Court of Pennsylvania] after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.*, "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

**Commonwealth v. Seskey**, 86 A.3d 237, 242-43 (Pa. Super. 2014) (quoting **Commonwealth v. Copenhefer**, 941 A.2d 646, 649–50 (Pa. 2007)). In **Seskey**, this Court applied **Cunningham** to hold that **Miller** did not satisfy the PCRA's retroactivity exception as set forth in Section 9545(b)(1). **Id.** at 243.

It is now clear that, in addition to **Montgomery**'s overruling of **Cunningham**, **Montgomery** has also effectively overruled any decision relying on **Cunningham** to reject **Miller**'s applicability to the PCRA's

retroactivity exception, as this Court did in **Seskey**. In the wake of **Montgomery**, it is irrefutable that **Miller** is "a constitutional right that was recognized by the Supreme Court of the United States" and "has been held by that court to apply retroactively." 42 Pa.C.S. § 9545(b)(1)(iii); **see also Commonwealth v. Secreti**, ___ A.3d ___, 2016 WL 513341, (Pa. Super. 2016).[6] Consequently, the PCRA court's legal basis for denying King's and Lekka's PCRA petitions is no longer valid. Thus, we hereby reverse the orders denying King's and Lekka's PCRA petitions. Additionally, we vacate their mandatory LWOP sentences, as they are patently illegal under **Miller**, and remand for further proceedings consistent with this decision, **Miller**, and **Montgomery**.

Orders **reversed**. Mandatory LWOP sentences **vacated**. Cases **remanded** for further proceedings. Jurisdiction relinquished.

Judge Lazarus files a concurring and dissenting memorandum.

Judge Ott concurs in the result of this memorandum.

---

[6] In **Secreti**, this Court held that "the **Miller** rule of law 'has been held' to be retroactive for purposes of collateral review as of the date of the **Miller** decision on June 25, 2012. The date of the **Montgomery** decision (January 25, 2016, as revised on January 27, 2016) will control for purposes of the 60–day rule in Section 9545(b)(2)." **Secreti**, 2016 WL 513341 at *6.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2016